Rudolph A. **BERTSCH**, Plaintiff,

v.

**FORD MOTOR COMPANY**, Defendant.

Civ. A. No. 5–71755.

United States District Court,
E. D. Michigan, S. D.

May 25, 1976.

---

Neal Bush, Detroit, Mich., for plaintiff.

Richard J. Molloy, Ford Motor Co., Dearborn, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

PHILIP PRATT, District Judge.

This action was filed on September 12, 1975, alleging, inter alia, age discrimination in violation of 29 U.S.C. § 621 et seq. (ADEA). According to the allegations of the complaint, plaintiff was employed by defendant from January 24, 1966 until his termination on November 15, 1974, at which time younger employees were transferred to plaintiff's department. Defendant

moves to dismiss the age discrimination claim for failure to exhaust ADEA remedies, specifically for failure to timely resort to the Michigan Civil Rights Commission (MCRC), pursuant to 29 U.S.C. § 633(b).

Uncontroverted affidavits establish that plaintiff was terminated by defendant on November 15, 1974, and filed a notice of intention to sue with the Secretary of Labor, pursuant to 29 U.S.C. § 626, on May 13, 1975, 180 days from the date of the alleged discrimination. However, plaintiff, unrepresented by counsel and unaware of the requirements of M.C.L.A. § 423.307(b), did not file a complaint with the MCRC within 90 days of the alleged discrimination. In fact, he was not made aware of the 90 day requirement until he consulted counsel on April 23, 1975. At that point, the 90 days had expired and he was advised by the MCRC that it would not accept his complaint.

The pertinent sections of the ADEA[1] provide that a civil action may not be commenced until 60 days after filing of notice of intent to sue with the Secretary of Labor (§ 626(d)). Moreover, if § 633(b) is apposite, as in a state such as Michigan, which has a law prohibiting age discrimination and enforcement machinery (*Vaughn v.*

*Chrysler,* 382 F.Supp. 143 (E.D.Mich.1974); *Eklund v. Lubrizol,* 529 F.2d 247 (6th Cir. 1976) ), the notice must be filed within 300 days of the alleged discrimination (or within 30 days of termination of state proceedings) (626(d)(2) ); and no suit may be brought until 60 days after state proceedings have been commenced (633(b) ). In cases to which § 633(b) does not pertain, § 626(d)(1) requires filing of a notice of intent to sue within 180 days after the alleged discrimination. The notice provisions of § 626(d) have been held to be jurisdictional prerequisites to suit. *Hiscott v. General Electric Co.,* 521 F.2d 632 (6th Cir. 1975).

The specific question in issue is whether plaintiff's failure to resort to the state agency, in compliance with the 90 day state limitations period[2] bars the instant action. Plaintiff contends that timely filing with the MCRC is not required; that a state limitations period cannot govern a federal right; that the facts of this case create an equitable exception to the state limitations period; and that the Court should retain jurisdiction to permit resort to the MCRC.

Due consideration of the issues prompts this Court to conclude that resort to the MCRC is required, and that the state limi-

---

1. *Section 626.*
   "(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
   (1) within one hundred and eighty days after the alleged unlawful practice occurred, or
   (2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier."
   *Section 633.* FEDERAL–STATE RELATIONSHIP. *Federal action superseding State action.*
   "(a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.
   *Limitation of Federal action upon commencement of State proceedings.*

   (b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . .. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of filing of a written and signed statement . . the proceeding shall be deemed to have been commenced . . . at the time such statement is sent . . . ."

2. There are three relevant limitations periods: (1) the 300 day period for filing notice of intent under 626(d)(2) ("longer federal period"); (2) the 180 day period for filing notice of intent of 626(d)(1) ("shorter federal period"); (3) the 90 day state period for filing with the MCRC ("state period").

tations period generally governs resort to the state agency. However, plaintiff's failure to comply with the state limitations period, based on lack of knowledge and belated attempts at compliance, does not preclude a civil action, inasmuch as plaintiff did file the notice of intent to sue within the shorter federal period.

### RESORT TO MCRC

According to § 633(b), in Michigan, *"no suit* may be *brought . . . before* the expiration of sixty days after *proceedings have been commenced* under the State law . . . ."* The plain meaning of the language is that a suit may not be instituted until state administrative proceedings have been in progress for 60 days. If such proceedings are not commenced, 60 days simply cannot run and the requirement is not fulfilled.

Moreover, the language of 42 U.S.C. § 2000e–5(c)[3] (Title VII) which contains "virtually identical requirements" to § 633(b) (*Rucker v. Great Scott,* 528 F.2d 393 (6th Cir. 1976), provides an instructive analogy. The Sixth Circuit has cautioned, with respect to such comparisons, that the ADEA,

"is embodied in a separate act and has its own unique history (which) at least counsels the examiner to consider the *particular problems* sought to be reached by the statute." (*Laugesen v. Anaconda,* 510 F.2d 307, 312 (6th Cir. 1975), emphasis added).

The "particular problem" at bar is the meaning of § 633(b), which mirrors the language of § 2000e–5(c). As several courts have explained:

"The minor differences between section 633 and its counterpart under the 1964 Act are insignificant and provide no support for an interpretation of the former

which is contrary to" interpretations of the latter. (*Goger v. H. K. Porter Co.,* 492 F.2d 13, 16 (3rd Cir. 1974); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975); See also *Vaughn v. Chrysler,* 382 F.Supp. 143, 146 (E.D.Mich. 1974) ).

The identity of the two provisions is reinforced by reference to the legislative history. The initial bill, S. 830, contained only a provision similar to § 633(a). During hearings on the bill, representatives of a number of states suggested the incorporation of comparable Title VII provisions. (*Age Discrimination in·Employment,* Vol. 1, *Hearings Before the Subcommittee on Labor and Public Welfare of U. S. Senate* at 1, 102, 234, 90th Cong., 1st Session (March 15–17, 1967), ("Senate Hearings") ). Ultimately, § 633(b), nearly identical in its terms to § 2000e–5(c), was included in the ADEA. Therefore, the conclusion that § 633(b) is to be construed in the same ·manner as § 2000e–5(c) is inescapable. Inasmuch as courts have required deferral to state agencies under § 2000e–5(c), (*Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Crosslin v. Mountain States Tel. and Tel. Co.,* 422 F.2d 1028 (9th Cir. 1970) vac. and remanded 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618; *EEOC v. Union Bank,* 408 F.2d 867, 869 (9th Cir. 1968) ), it is logical to conclude that the same result obtains to § 633(b). In fact, a number of courts have adopted the same line of reasoning in interpreting § 633(b). (*McGarvey v. Merck,* 359 F.Supp. 525, vac. 493 F.2d 1401, cert. den. 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63); *Goger, supra; Rucker v. Great Scott,* 10 EPD ¶ 10,508 (E.D.Mich.1974), affd. other grounds, 528 F.2d 393 (6th Cir. 1976) ). Accordingly, this Court concludes that a claimant must resort to the MCRC prior to instituting suit.

---

**3.** Section 2000e–5(c) [§ 706(c) ] provides, insofar as pertinent:

"(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief

from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, · . . . "

This Court does not find any of plaintiff's arguments to the contrary, based on *Vasquez v. Eastern Airlines,* 11 EPD 10,617 (DPR 1975), the concurrence in *Goger,* and *Skoglund v. Singer Co.,* 403 F.Supp. 797 (DNH 1975), to be convincing. Basically, plaintiff argues: (1) that the ADEA is not analogous to Title VII; (2) that the section requires a 60 day deference period only *if* a complaint is filed with a state agency; and (3) that § 633 is not jurisdictional.

■ With regard to the Title VII analogy, this Court is cognizant of the differences between the two acts. In particular, much of the enforcement mechanism of the ADEA is tied to the Fair Labor Standards Act[4] (FLSA) rather than to Title VII.[5] (See 29 U.S.C. § 626(b), (e)). Congress sought to separate redress of age from sex and race discrimination in an effort to streamline administration and insure sufficient attention to age claims, which it perceived to be based on a different underlying societal dynamic. (Senate Hearings at 22–29, 95–97, 101, 147, 218, 221).[6] However, it is clear that the ADEA is an amalgam of a number of statutes, including Title VII (Senate Hearings, at 32, 44, 48 (state acts), 97 (FLSA and Title VII); See S. 780, which combined features of the NLRA). To the extent that a particular provision, such as § 633(b), is derived from Title VII, it may be construed consistently with that Act.

■ Secondly, the Court is unpersuaded by plaintiff's arguments that exhaustion of state remedies is optional. The suggested construction of § 633(b) as requiring a 60 day deferral period only in the event that proceedings have been commenced is contrary to the plain meaning of the language, the operation of § 2000e–5(c), and precedent (*Goger, supra; McGarvey, supra*).

Moreover, Congressional intent to avoid lengthy administrative delays (*Vasquez, supra*) is reflected in the separate agency mechanism, shortened time for federal investigation,[7] and an apparent provision for *concurrent* exhaustion of state and federal remedies,[8] rather than in an optional state exhaustion requirement. Nor does this Court find the import of § 633(a), which stays state actions upon commencement of a federal action, as indicative of an intent to make state exhaustion optional (See concurrence in *Goger*). The ADEA simply accords the state a period of "respectful but modest deference." (*Pacific Maritime Assoc. v. Quinn,* 465 F.2d 108, 110 (9th Cir. 1972)). Thus, the fact that the state proceedings need not be concluded (*Goger,* at 15) and may be stayed does not detract from the mandatory requirement that they be commenced.

The Court is also unconvinced by plaintiff's argument that state exhaustion is not required because § 633(b), contextually separate from § 626 and not directed to the Court's power, is not jurisdictional. (*Vasquez, supra; Skogland, supra*). In the view of this Court, the argument based on the existence of two statutory sections emphasizes form over substance.[9] Although

**4.** 29 U.S.C. § 201 et seq.

**5.** 42 U.S.C. § 2000e et seq.

**6.** Thus, Senator Smathers noted that separate enforcement of age and other discrimination was necessary to insure that age was not neglected. (At 29). Senator Javits was especially concerned with administrative efficiency, and therefore sought to avoid resort to the EEOC. (At 22–29). Mr. Biemiller observed, in suggesting enforcement under the FLSA: "There is a distinction between age discrimination and color and sex discrimination which warrants a distinct and separate method of administration and enforcement." (At 95, 97).

**7.** Sixty days notice to the Secretary of Labor under § 626(d), as compared with 180 days afforded the EEOC in private actions (42 U.S.C. § 2000e–5(f)(1).

**8.** Section 633(b) only requires pendency of state proceedings for 60 days prior to institution of *suit,* whereas § 2000e–5(c) requires 60 day pendency prior to *filing* a *charge* with the EEOC. While the question is not free from doubt (See *Vaughn, supra*), it appears that under the ADEA, unlike Title VII, exhaustion of state remedies need not be prior to resort to the federal agency. It need only be prior to institution of suit, and therefore may be concurrent with federal exhaustion. The Court, however, need not decide the issue on this record.

**9.** The two sections may simply reflect legislative changes in the bills. The original bills, S.

there may be some basis upon which to distinguish § 626(d) and § 633(b),[10] the cross-references in the two sections indicate that they are to operate in tandem. There would be little point, for instance, to the additional 120 day period of § 626(d)(2), unless it were intended to be enforced in conjunction with a state exhaustion requirement of § 633(b). As one court has explained:

> "the purpose underlying the extended period . . . is to give the state agency an initial opportunity to process the claim . . ." (*Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1232 (8th Cir. 1975)).

Moreover, the timeliness of resort to state remedies under § 633(b) may determine which of the jurisdictional federal notice periods of § 626(d) applies (discussion, *infra*). Thus, compliance with § 633(b), at a minimum, is integrally related to the jurisdictional requirements of § 626(d). Finally, the comparability of § 626(d) and § 633(b) to corresponding provisions of Title VII (42 U.S.C. 2000e–5(c) and (e) also reinforces their relationship. Accordingly, this Court declines to conclude that the mere fact that § 633(b) is a separate statutory provision means that it is neither mandatory nor jurisdictional.

Furthermore, this Court does not discern the possibility that § 633(b) may not affect the power of the court to hear the controversy as providing a basis for decision in the instant case. There is some authority for the proposition that failure to comply with state exhaustion requirements under Title VII does not affect the power of the court. (*EEOC v. Wah Chang Albany Corp.,* 499 F.2d 187 (9th Cir. 1974) ). Assuming arguendo that § 633(b) is not jurisdictional in the strict sense, it remains an enforceable prerequisite to suit, which, when properly raised by motion (*Wah Chang* at 190) can be considered by the court as precluding suit. The existence of a motion in the case at bar obviates the need to decide the question of jurisdiction. Accordingly, this Court concludes that resort to the state agency is a requisite to suit under the ADEA.

### STATE LIMITATIONS PERIOD

Having determined that resort to the MCRC is mandatory, the Court must consider the impact of a state limitations period of 90 days, which is significantly shorter than the time allotted for filing a federal notice of intent under § 626(d). In so doing, the Court finds that analysis of similar provisions of Title VII [11] provide a suitable starting point.

Prevailing case authority has established that untimely state filing deprives a claimant under Title VII of the longer federal filing period. Thus, in *Dubois v. Packard Bell,* 470 F.2d 973 (10th Cir. 1972), plaintiff failed to file within the state period, and the application was rejected as untimely. Subsequently, after the shorter federal (then 90 day) period had expired, plaintiff filed with the EEOC. The court held that the suit was barred because she "did, indeed deprive the New Mexico Commission of a bona fide opportunity to consider or act

---

830 and S. 788, contained the provisions of § 633(a), but neither § 633(b) nor § 626(d). Those provisions were added subsequent to hearings. Section 633(b), added in response to testimony concerning § 633(a), is not necessarily intended to be distinct from § 626.

**10.** Current case law has only dealt with § 626(d) as jurisdictional. (*Hiscott, supra; Powell v. Southwestern Bell,* 494 F.2d 485 (5 Cir. 1974); *Edwards v. Kaiser Aluminum,* 515 F.2d 1195 (5th Cir. 1975) ). In addition, there has been some tendency to isolate § 626(d) as containing the jurisdictional prerequisites. (See *Ott v. Midland Ross Corp.,* 523 F.2d 1367 (6th Cir. 1975) (holding that while § 626(d) is jurisdictional, § 626(e) is not)).

**11.** 42 U.S.C. § 2000e–5(c) (See fn. 3, *supra,* and (e):

> "(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ."

upon her complaint," (at 975). In addition, it held that since she had not complied with the shorter federal period, her civil action was barred. That is, the Court refused to accord plaintiff the longer federal period, but did not reach the issue of the availability of the shorter period.

In *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. 1975, en banc), plaintiff filed with the state agency after the (90 day) state period and the shorter (180 day) federal period had run, but the state agency accepted and processed the complaint. The charge as filed with the EEOC after the shorter federal period had run, was also processed. The court held that in a deferral state, the initial (i. e., *state*) charge must be filed within the shorter *federal* period in order to invoke the benefit of the longer federal period for filing the *federal* charge. Since plaintiff had not timely filed with the state, she was not entitled to utilize the longer federal period to file with the EEOC, and the action was dismissed. Although it deprived the untimely state applicant of the longer federal period, it, too, did not have to reach the question of whether such a plaintiff may utilize the shorter federal period, as if no state remedy existed.

*Olson* and *Dubois* agree that an untimely state filing suspends the availability of the longer federal but disagree as to the standard for determining timeliness. *Olson* holds that a state filing is timely within 180 days of the discrimination, regardless of the state limitations period. *Dubois,* on the other hand, utilized the state limitations period, in an effort to insure "bona fide opportunity" for consideration.

This Court must first determine which approach it finds apposite. If it opts for the *Olson* view, then the failure of plaintiff to file within the state period is not necessarily fatal, since plaintiff contacted the MCRC within 180 days and was rebuffed.

In such a case, plaintiff might well have the benefit of the longer federal period with which he has complied. If the Court adopts the *Dubois* approach, plaintiff would clearly not have the longer federal period, and since he filed his notice with the Secretary of Labor within the shorter federal period, the court would be squarely confronted with the issue left undecided by *Olson* and *Dubois.*

■ In the view of this Court, the state limitations period should be determinative of the timeliness of state exhaustion for a number of reasons. In the first place, the imposition of a standard 180 day period on the state agencies is not easily enforceable by federal courts. In states with shorter limitations periods, the rule would encourage by-pass of the state remedy and thwart the objectives of the exhaustion requirement.[12] The most reliable means of insuring resort to the state agency and bona fide opportunity for state action is utilization of the state limitations period.

Secondly, the ADEA evinces a strong intent to permit continued operation of state anti-discrimination laws. Thus, § 633(a) generally provides that:

> "the act will not affect the jurisdiction of any agency of any state performing similar functions with regard to discrimination in employment on account of age . . ." (2 *U.S.Code Cong. & Adm. News,* 90th Cong., 1st Sess., at 2224 (1967) ).

The refusal of Congress to preempt the operation of state laws,[13] in combination with the state exhaustion requirement of § 633(b) is a persuasive indication of a legislative desire to incorporate state procedures.

That intent is supported by the specific Congressional awareness of existing state statutes and their myriad provisions at the time the bill was passed.[14] Yet, a proposal

---

**12.** In *Davis v. Valley Distributing,* 522 F.2d 827 (9th Cir. 1975), the court felt that the resolution of the by-pass was for the states to change their laws. Such an approach is somewhat unrealistic, and ignores the federal interest in

state exhaustion which calls for a federal solution.

**13.** See Senate Hearings at 39, 43, 48 and 92.

**14.** Senator Murphy noted: "We are not, however, without experience in this area. Twenty-

to create federal guidelines in areas of potential federal-state conflict was not included in the final act.[15]  And, the concern that there be minimal preemption, and that the federal act coordinate with the state acts was paramount.[16]  Therefore, it is fair to infer that state procedures, including limitations periods, were intended to be incorporated into the exhaustion requirement of § 633(b).

That recognition does not, however, inevitably mean that the state limitations period governs the availability of a federal remedy in every instance.  Although the ADEA evidences an intent to incorporate state procedural guidelines such as limitations periods, that intent must be accommodated to the federal filing deadlines of § 626(d).  Those time limits of 180 and 300 days, represent the considered judgment of Congress with respect to the length of time necessary to initiate a federal claim.  More specifically,

> "The shorter of the two federal limitations periods represents the judgment of Congress as to the proper balance between the time reasonably required by the employee to prepare and file a claim of discrimination, and protection of the employer from a stale claim." (*Davis v. Valley Distributing Co.*, 522 F.2d 827, 832 (9th Cir. 1975).  See also *Powell, supra,* at 488; *Edwards, supra,* at 1198–1199)).

The longer period is intended to permit the state agency an opportunity to act "without jeopardizing the federal right." (*Olson, supra,* at 1232).  The importance of the basic 180 day period as the temporal yardstick for exercise of the federal right cannot be overlooked.[17]  Use of a significantly shorter state period as an absolute bar would, "frustrate the federal remedy by imposing limitations periods shorter than the federal." (*Olson,* at 1232).

■  Moreover, the statute contains several indicia of Congressional intent not to permit state procedures which differ significantly from the federal to impinge upon the federal action.  Thus, for instance, § 633(a) declines to preempt only those statutes which perform "like functions."  State exhaustion is required under § 633(b) only if the state has enacted a wide-ranging enforcement scheme (*Curry, supra; Eklund, supra*), akin to the federal.  Moreover, the proviso of § 633(b) which defines "commencement" of state proceedings indicates a Congressional desire to avoid the impact of harsh state procedures.  (*Davis, supra* at fn. 12).  Accordingly, it is a fair presumption that Congress did not intend that those state practices which differ substantially from the federal, such as a 90 day limitations period, be afforded unchecked deference.

■■  Consideration of all of the relevant policies prompts this Court to conclude that Congress intended that state limitations periods be fully operative to the extent that their operation is fair, feasible, and practicable.  That is, when they do not unduly interfere with the assertion of the federal right, they must be enforced.  When, however, they are substantially shorter than the federal period, compliance should not be an automatic and mandatory pre-condition to suit.  Rather, timely resort should generally be required.  Certainly, it should be necessary if one seeks to secure the benefit of the longer 300-day federal filing period.  However, where, as here, the failure to timely exhaust is only a function of lack of knowledge and the state refuses jurisdiction, a claimant should be afforded the benefit of the shorter 180 day federal period allotted by Congress as the time "reasonably required  .  .  .  to prepare and file a claim." (*Davis, supra,* at 827).  If

---

three states and Puerto Rico have adopted legislation outlining age discrimination." (Senate Hearings at 32; See also comments concerning New York statute (at 35), 228 et seq.); and Appendices following hearings).

**15.**  Senate Hearings at 25.

**16.**  Senate Hearings at 44.

**17.**  Its importance is reinforced by the 1972 amendment to Title VII which extended 90 and 210 day limitations periods to 180 and 300 days respectively.  (Pub.L.No. 92–261, 86 Stat. 103, amending 42 U.S.C. § 2000e (1970) ).

he properly files a notice of intent to sue with the Secretary of Labor within that time, the civil action may proceed.

The foregoing rule reconciles the competing policies of the ADEA. It insures assertion of the federal right within the minimum federal time period, but does not permit a claimant in a § 633(b) state to avail himself of the longer federal period without resort to the state. On the other hand, it promotes enforcement of the state exhaustion requirement according to state procedure. In so doing, it in no sense tolerates deliberate, bad faith, or other inexcusable by-pass of the state remedy.[18] However, in acknowledging that disparate limitations periods may result in the refusal of the state to act, it recognizes that, if the state should decline to, for whatever reason, deal with a complaint . . . (there is) no suggestion that such refusal should be permitted to deprive a complainant of his federal remedy. (*Pacific Maritime Assoc. v. Quinn,* 465 F.2d 108, 110 (9th Cir. 1972)).

Finally, it avoids unfairness to a claimant in a § 633(b) state, who might otherwise be deprived of a federal action despite compliance with the shorter federal time period, while his counterpart in a state without an agency has 180 days to act.

The Court also notes that the *result* is consonant with *Davis v. Valley Distributing, supra,* wherein the court permitted an untimely state applicant to utilize the shorter federal period because, "The Congressional statute of limitations is definitive." (At 832); See also *Olson, supra,* at 1232). However, this Court declines to formulate such a blanket rule. Rather, it is of the opinion that the applicability of the state limitations period is a question of legislative intent.[19] In view of the intent of the ADEA to incorporate state limitations periods, to permit operation of similar state laws, and to permit at least 180 days for federal filing, this Court concludes that the intent of Congress is best effectuated by a rule which requires compliance with the state limitations period. However, when that period is significantly shorter than the federal, and failure to comply is, as on this record, attributable to the ignorance of an unschooled claimant, filing with the Secretary of Labor within 180 days suffices to confer a right of action. A contrary rule would be "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." (*Love v. Pullman, supra,* 404 U.S. at 527, 92 S.Ct. at 619).

Accordingly, defendant's motion is denied. The Court need not address the arguments concerning an equitable exception or retention of jurisdiction.

IT IS SO ORDERED.

---

**18.** The Court need not reach the question of by-pass on this record.

**19.** See e g., 42 U.S.C. § 1988, which calls for application of the most analogous *state* statute of limitations.