Elida DePRIEST, Plaintiff,

v.

SEAWAY FOOD TOWN, INCORPORATED, a foreign corporation, Defendant.

Civ. A. No. 81–60097.

United States District Court,
E. D. Michigan, S. D.

July 30, 1982.

---

99. *Cf. RCA Global Communications, Inc. v.* *FCC*, 559 F.2d 881, 885 (2d Cir. 1977).

William M. Crawforth, Stalburg, Bean, Laritz & Fischel, Detroit, Mich., for plaintiff.

Curtis DeRoo, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This employment discrimination case is now before the court on defendant Seaway Food Town, Inc.'s motion for summary judgment. Fed.R.Civ.P. 56(b). For the reasons given below, the motion is granted in part and denied in part.

### FACTS

Plaintiff Elida DePriest is an approximately 50-year-old woman of Mexican ancestry. She lives in Temperence, Michigan. On April 4, 1980, she applied at defendant's Lambertville, Michigan store for a position as a meat-wrapper. Her application indicates that she was seeking a job in defendant's Lambertville store, and that she had 25 years experience in the meat packing industry.

On May 5, 1980, plaintiff learned that the position had been given to Amanda Garvin, a 40-year-old white woman with no prior meat packing experience. According to the affidavit of Arden Westover, an employee of Seaway responsible for hiring in the meat departments of defendant's Michigan stores, the position filled was a temporary one. It required the person hired to substi-

tute for vacationing permanent employees at all of defendant's Michigan stores. The affidavit states that Amanda Garvin was laid off in September of 1980 when the vacation season ended.

On June 6, 1980, Mrs. DePriest filed a charge of national origin employment discrimination with the Detroit office of the Equal Employment Opportunity Commission (EEOC) and with the Michigan Civil Rights Commission (MCRC). On November 28, 1980, Mrs. DePriest filed a second charge of employment discrimination, this time with the Cleveland, Ohio office of the EEOC, and simultaneously with the Ohio Civil Rights Commission (OCRC). This second charge alleged national origin *and* age discrimination.

On January 20, 1981, the MCRC dismissed the charge filed with it for lack of evidence of discrimination. On March 12, 1981, the Detroit office of the EEOC determined that there was no reasonable cause to believe the charge was true and sent plaintiff a notice of right to sue.

On May 29, 1981, the Cleveland office of the EEOC issued a notice of right to sue at plaintiff's request, as more than 180 days had expired since the filing of the charge. On July 8, 1981, the OCRC determined that it had no jurisdiction since all the allegations of discrimination involved the operations of the defendant within Michigan, and it dismissed the charge.

This action was commenced June 12, 1981. It alleges national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (the court assumes that where the complaint says 42 U.S.C. § 2000(*c*) *et seq.*, it means to say 42 U.S.C. § 2000e *et seq.*), and, *apparently*, age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

## DISCUSSION

### A. *National Origin Discrimination*

■ The defendant moves for summary judgment on the national origin discrimination aspect of the complaint on the following ground: the job application completed by plaintiff did not ask for national origin or ancestry; plaintiff did not state her national origin or ancestry on the application; the name "DePriest", which did appear on the application, is French, not Mexican or Hispanic; Arden Westover, the man responsible for deciding not to hire the plaintiff, states in his affidavit that he "never met Elida DePriest and had no idea what her national origin was." Therefore, defendant's argument goes, there is no genuine issue of fact as to defendant's knowledge of plaintiff's national origin, and if defendant was not aware of plaintiff's national origin, it could not have discriminated against her on that basis.

The simple answer to this argument is that there does appear to be a genuine issue of fact as to whether defendant was aware of plaintiff's national origin. Plaintiff's forename "Elida" appears on the application. Plaintiff's maiden surname "Bravo" also appears on the application. Both these names suggest Mexican or Hispanic derivation.

In addition, it is clear from deposition testimony that plaintiff spoke personally with at least one of the defendant's employees, Gary Jewell. Jewell would have observed Mrs. DePriest's features, features which might suggest a Mexican or Hispanic ancestry. Jewell also testified that he knew plaintiff's son because he worked in the same Lambertville store where Jewell worked. If Gary Jewell knew Mrs. DePriest's ancestry, this information could have been passed on to Arden Westover.

Furthermore, on the educational background portion of the job application, plaintiff indicated that she attended grammar school in San Antonio, Texas. The court takes judicial notice that many people of Mexican or Hispanic origin, both aliens and citizens, live in San Antonio. At the very least, plaintiff's early connection with San Antonio, her maiden name "Elida Bravo", and her personal encounter with defendant's employee Gary Jewell, all together create a genuine issue of fact as to whether the defendant was aware of plaintiff's national origin.

In employment discrimination cases where the defendant's state of mind, intent and motive are central issues, summary judgment should be granted only in the clearest of cases. *EEOC v. Southwest Texas Methodist Hospital*, 606 F.2d 63 (5th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980). Therefore, because the affidavits, answers to interrogatories, and other pleadings in this case do not clearly establish that defendant was unaware of plaintiff's national origin, defendant is not entitled to summary judgment. Fed.R.Civ.P. 56(c).

The motion for summary judgment on the national origin discrimination aspect of the complaint is denied.

### B. *Age Discrimination*

The defendant has also moved for summary judgment on the age discrimination aspect of the complaint, arguing that 1) it is undisputed that the defendant did not know plaintiff's age since it did not appear on the employment application, and 2) plaintiff did not file her charge of age discrimination with the EEOC within 180 days as required by 29 U.S.C. § 626(d)(1).

Although this argument is not raised by the defendant, the court notes first that plaintiff's complaint does not comply with the pleading rules of Fed.R.Civ.P. 8(a) insofar as her age discrimination claim is concerned. The complaint states only that "plaintiff believes it is company policy of Defendant to refuse to hire persons of 50 years of age or older." There is no short and plain statement of the grounds upon which the court's jurisdiction depends. At the very least the complaint should be amended to state a basis for this court's subject matter jurisdiction. See generally, 5 Wright and Miller, *Federal Practice and Procedure*, § 1214.

Assuming that the basis for the age discrimination claim is the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, the court is unable to agree with the defendant that there is no genuine issue as to whether defendant knew plaintiff's age.

First of all, defendant's argument assumes that the defendant had to know plaintiff's *actual* chronological age in order to have discriminated in violation of ADEA. This assumption is unfounded. It is not necessary for defendant to have known plaintiff's *exact* age in order to have discriminated against her on the basis of age.

Section 623(a)(1) of Title 29 of the United States Code makes it unlawful for "an employer to fail or refuse to hire ... any individual ... because of such individual's age." This prohibition applies to individuals at least 40 years of age but less than 70 years of age. 29 U.S.C. § 631(a).

The ADEA is broad, remedial legislation. 29 U.S.C. § 621; *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 765, 99 S.Ct. 2066, 2076, 60 L.Ed.2d 609 (1979) (Blackmun, J. concurring); 1967 U.S.Code Cong. & Admin.News pp. 2213, 2214. Thus, its provisions should be liberally construed to effectuate the underlying policies of the act. *Oscar Mayer supra; Jackson v. Alcan Sheet & Plate*, 462 F.Supp. 82, 87 (N.D.N.Y.1978).

The purposes of ADEA are clearly set out in 29 U.S.C. § 621 and it is consistent with those purposes to interpret the word "age" in 29 U.S.C. § 623(a)(1) to mean more than simple chronological age. "Age" means "an advance condition of life," Webster's Third New International Dictionary (Unabridged) at 40, or "the condition of being old," Webster's New World Dictionary (Second College Ed.) at 25.

Thus, so long as plaintiff was in fact within the age limitations of the act, 29 U.S.C. § 631(a), defendant Seaway Food Town *could* have violated ADEA if it refused to hire plaintiff simply because she was old, even if it did not know her *actual* age.[1]

---

1. The court is uncertain whether plaintiff could prove a case of age discrimination against the defendant on this theory since the complaint alleges that Amanda Garvin, the woman actually hired, was about 40 years old. See *Price v.*

*Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977), suggesting that the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), standards for articulating a prima facie case, including the

Of course, plaintiff cannot escape a summary judgment with a simple conclusory allegation that she was not hired because of her age. *Locke v. Commercial Union Insurance Co.*, 676 F.2d 205 (6th Cir. 1982). However, the record in this case consists of more than a mere conclusory allegation.

The employment application did not require plaintiff to state her age. It only asked her to state her birth date if she was under 18 or over 70. Plaintiff left that part of the application blank.

However, the employment application did ask plaintiff to describe her past and present employment, as well as her educational background. Plaintiff indicated that she had completed two and one-half years of high school, and that she had begun working as a meat packer in July, 1946. Assuming that plaintiff was 16 when she left high school, and assuming she went to work immediately, both reasonable assumptions, one could easily deduce from the application alone that plaintiff was approximately 50 years old in 1980.

Furthermore, as pointed out above, plaintiff spoke personally with Gary Jewell when she first applied for the job. Jewell might have been able to approximate Mrs. DePriest's age and he could have passed this information along to Arden Westover.

Thus, there seems to be a genuine issue of fact as to whether the defendant knew plaintiff's "age", and defendant is not entitled to summary judgment on this ground. Fed.R.Civ.P. 56(c).

The defendant has also moved for summary judgment on the procedural ground that the plaintiff did not file her charge of age discrimination with the EEOC within 180 days as required by 29 U.S.C. § 626(d)(1), and that, therefore, she is barred from asserting the age discrimination claim in this court.

Filing a charge with the EEOC is a prerequisite for commencing a civil action in the federal court. 29 U.S.C. § 626(d). However, § 626(d) provides two possible time periods within which such a charge must be filed with EEOC:

(d) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section § 633(b) applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State Law, whichever is earlier.

Section 633(b) provides:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law....

States which have a "State authority" as contemplated by § 633(b) are commonly known as "deferral states." Resort to state agencies in "deferral states" is mandatory, not optional. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60

---

standard that the plaintiff be replaced by a person outside the protected group, apply to age discrimination actions. The Sixth Circuit appears to have adopted this view, although this is not entirely clear. See *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir. 1980); *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975). Cf. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982). Both *Sahadi* and *Laugesen*, as well as *Price*, were discharge or reduction-in-force cases. However, the requirement that the plaintiff be replaced by a person outside the protected group would seem to be an even more important element in a case of discriminatory refusal to hire. See *McDonnell Douglas, supra.*

On the other hand, if plaintiff's theory is only that the defendant had a *policy* of not hiring people over 50, then it seems to follow that to make out a prima facie case she would have to show that the defendant had knowledge of her *actual* age, or at least knowledge that she was over 50 years of age.

L.Ed.2d 609 (1979). Since the "alleged unlawful practice" in this case occurred in Michigan, and since Michigan is a "deferral state," M.C.L.A. §§ 37.2202(1), 37.2601 *et seq.*, this would appear to be "a case to which § 633(b) applies." As an initial matter, therefore, it is necessary to determine if plaintiff complied with the dictates of § 633(b) and *Oscar Mayer.*

The plaintiff filed her charge of age discrimination with the Ohio Civil Rights Commission. She has never filed a charge of age discrimination with the Michigan Civil Rights Commission. Although Ohio is also a "deferral state", Ohio Rev.Code Ann. § 4112.01 *et seq.* (Baldwin), plaintiff manifestly did not comply with the dictates of § 633(b) and *Oscar Mayer.*

First, as a matter of statutory construction, § 633(b) says, "In the case of an alleged unlawful practice occurring in a [deferral] State . . . no suit may be brought . . . before the expiration of sixty days after proceedings have been commenced under *the* State law . . . ." Thus, the statute on its face requires an aggrieved party to commence proceedings in the appropriate agency of the state in which the alleged act of discrimination occurred.

Furthermore, the purpose of § 633(b) is to "screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings." *Oscar Mayer, supra,* at 756, 99 S.Ct. at 2071. A state with no connection to or jurisdiction over an alleged discriminatory act is in no position to settle anything to the satisfaction of anyone.

Therefore, it is consistent with the purpose of § 633(b) to require aggrieved parties to commence proceedings in the appropriate state agency, if any, in the state in which the alleged act of discrimination occurred. Filing in the wrong state deprives the court of jurisdiction just as much as failure to file at all with an available state agency.

The court recognizes that ADEA is "a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). The court also recognizes that there may be close cases in which filing in the wrong state may be excused, or even cases where the "alleged unlawful practice" may involve two or more states. However, this is not such a case. Plaintiff applied for a job in Michigan at a Michigan store while she was living in Michigan. The alleged act of discrimination clearly occurred in Michigan. The case never had any connection with Ohio and it was not reasonable to think that the Ohio Civil Rights Commission would have jurisdiction to act on plaintiff's complaint.

As a general rule, therefore, § 633(b) not only requires that a charging party commence proceedings with a state agency, *Oscar Mayer, supra,* it requires the party to commence proceedings with a state agency in the *right* state. Since the plaintiff did not file her charge of age discrimination with the Michigan Civil Rights Commission, the state agency in the state where the "alleged unlawful practice" occurred, she did not comply with § 633(b) and *Oscar Mayer,* and this court has no jurisdiction to hear her age discrimination claim.

Nothing this court has said, of course, would prevent the plaintiff from filing her age discrimination charge with the MCRC now. The Supreme Court in *Oscar Mayer* clearly held that § 633(b) only requires a party to *commence* state proceedings in order to preserve a right of action under 29 U.S.C. § 626(c). It does not require the party to commence those proceedings within the time limits established by state law.

Therefore, since the plaintiff might yet comply with 29 U.S.C. § 633(b) by filing an age discrimination with the MCRC, it is proper for the court to determine now if plaintiff has also complied with the time limitations of 29 U.S.C. § 626(d).

At first glance, it might appear that § 626(d)(2) would provide the appropriate federal filing period since this appears to be "a case to which § 633(b) applies." The answer, however, is not quite so simple.

The issue here is whether plaintiff is entitled to benefit from the extended 300-day filing period, 29 U.S.C. § 626(d)(2), when she has not *timely* filed with the MCRC.[2] The case law indicates that she should not.

In *Dubois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972), the court held that where the plaintiff did not file her employment discrimination charge within the 90 days permitted by the New Mexico Human Rights Commission, she could not take advantage of the extended federal filing period, although the court stopped of holding that the *shorter* federal filing period *was* available. Title VII at that time required charges to be filed with EEOC within 90 days, or within 210 days in deferral states. Even though New Mexico was a deferral state, plaintiff's EEOC charge, filed 144 days after the discriminatory act occurred, was held untimely, since the New Mexico Human Rights Commission had rejected the complaint as untimely under state law. The court relied on the intent of Congress that states be given every opportunity to act upon a charge of discrimination before the federal agency is resorted to.

Judge Pratt of this district adopted the reasoning of *Dubois* in *Bertsch v. Ford Motor Co.*, 415 F.Supp. 619 (E.D.Mich.1976). There plaintiff filed his age discrimination claim with the Secretary of Labor on the 180th day after he was discharged from his job. However, he did not file a complaint with the MCRC within (then 90-day) state filing period. Judge Pratt held first that resort to the MCRC was mandatory, a holding later adopted by the Supreme Court in *Oscar Mayer.* He then went on to hold, apparently, that as a general rule a *timely* filing with the state agency was a prerequisite to a federal filing, "certainly ... if one seeks to secure the benefit of the longer 300-day federal filing period." 415 F.Supp. at 626, but that:

when that [state filing] period is significantly shorter than the federal, and failure to comply is, as on this record, attributable to the ignorance of an unschooled claimant, filing with the Secretary of Labor [now the EEOC] within 180 days suffices to confer a right of action. 415 F.Supp. at 627.[3]

*See also, DeGideo v. Sperry-Univac Co.*, 415 F.Supp. 227 (E.D.Pa.1976); *Mills v. National Distillers Products Co.*, 435 F.Supp. 72 (S.D.Ohio 1977); *Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851 (D.Md.1979).

Another line of cases, heralded by *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975) (en banc), also holds that an untimely state filing suspends the availability of the longer federal filing period. *Olson*, however, held that so long as a deferral-state plaintiff files with the appropriate state agency within 180 days, he is entitled to the 300-day period to file a charge with the EEOC, regardless of the state limitations period. However, this particular construction of the statute seems to have been disapproved by the Supreme Court in *Mohasco Corp. v. Silver*, 447 U.S. 807, 816 n.19, 100 S.Ct. 2486, 2491 n.19, 65 L.Ed.2d 532 (1980).

The court has found no case holding that the extended 300-day filing period of § 626(d)(2) is available where the state filing is not timely. Furthermore, even if it had, the court believes that *Dubois* and *Bertsch*, make better law.

The extended 300-day filing period is intended to give the state agency an opportunity to process the claim without jeopardizing the federal claim. *Olson v. Rembrandt Printing Co., supra.* Therefore, in Michigan, where a charge of age discrimination must be filed with the MCRC within 180 days after the alleged discrimination occurred, failure to timely file such a stale charge will deprive the complainant of the opportunity to use § 626(d)(2) to file with

---

**2.** A charge of discrimination must be filed with the MCRC no later than 180 days after the occurrence of the alleged discrimination. Administrative Code 1979 R 37.4(6).

**3.** After *Oscar Mayer*, the state filing, even if untimely, is still mandatory. However, that does change the effect of Judge Pratt's ruling which is to make the availability of the extended 300-day filing period dependent on a *timely* filing with the MCRC.

the EEOC within 300 days. Rather, a complainant who does not timely file with MCRC will be bound by the shorter 180-day filing period of § 626(d)(1).[4]

█ Since the plaintiff was required by § 626(d)(1) to file her age discrimination claim with the EEOC "within 180 days after the alleged unlawful practice occurred", it only remains to determine when the alleged unlawful practice occurred. Here there can be no doubt that it occurred on May 5, 1980 at the latest and the 180 days runs from that date.

Plaintiff's complaint alleges that on May 5, 1980, she learned she was not to be hired by defendant because another applicant had been hired. In the national origin charge filed with MCRC, plaintiff stated that on May 5, 1980, she learned that another woman had been hired for the position. The same statement appears in the charge filed with the OCRC. Therefore, by May 5, 1980, the alleged unlawful practice had occurred and plaintiff was aware of it.

Since plaintiff filed her age discrimination charge with the EEOC on November 28, 1980, more than 180 days after May 5, 1980, it was untimely filed and the age discrimination· aspect of plaintiff's complaint must therefore be dismissed.[5]

So ordered.

---

4. The court does not intend, by this opinion, to make law for those deferral states where the state filing period *exceeds* 180 days. *See, e.g.,* N.Y.Exec.Law § 297(5) (McKinney Supp. 1981). An argument could be made that in such states, a complainant should be entitled to more than 180 days to file with EEOC, but that in deferral states where the state filing period is *less* than 180 days, a complainant should be entitled to the 180-day period of § 626(d)(1), under the reasoning of this opinion and *Bertsch v. Ford Motor Co., supra.*

5. After *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), it would appear that the time periods of 29 U.S.C. § 626(d) are not jurisdictional prerequisites to suit in federal court, but rather operate like statutes of limitation, subject to waiver, estoppel, and equitable tolling. However, the plaintiff here has proffered no excuse for her late filing with the EEOC.