Juanita M. VAN ATTA, Plaintiff,

v.

KAL-AERO, INC., a Michigan
corporation, Defendant.

No. G82-51 CA1.

United States District Court,
W.D. Michigan, S.D.

Jan. 28, 1983.

Pinsky, Smith & Soet, By H. Rhett Pinsky, Grand Rapids, Mich., for plaintiff.

Brown, Colman & DeMent, P.C. By Loyal A. Eldridge, Kalamazoo, Mich., for defendant.

## OPINION RE: MOTION FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

Plaintiff brings suit for alleged violations of her rights under the Age Discrimination in Employment Act [hereinafter the "ADEA"], 29 U.S.C. §§ 621–34, under Michigan's Elliott-Larsen Civil Rights Act [the Act], M.C.L.A. §§ 37.2101–37.2804, and under Michigan common law for alleged breach of an employment contract. Jurisdiction for the federal claim is asserted under 29 U.S.C. § 626(c) and (d), and 28 U.S.C. §§ 1331, 1343(4). Plaintiff claims that the state law claims may be heard in this court on the basis of pendent jurisdiction under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Presently before the court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

Plaintiff began working as an avionics part manager for defendant Kal-Aero, Inc. ["Kal-Aero"] sometime in July of 1977.

Plaintiff claims that her work was satisfactory at all times. On February 25, 1981, plaintiff was discharged by defendant. At that time she was 62 years of age. Plaintiff alleges that her age was the determining factor in her discharge. Defendant claims that plaintiff's termination was lawful under both state and federal law.

Defendant advances two bases for summary judgment. First, defendant claims that plaintiff may not bring suit in federal court because her action is time-barred under 29 U.S.C. § 626(d) as plaintiff did not timely file her charge of age discrimination with the Michigan Department of Civil Rights. Defendant argues that because plaintiff did not file with the state agency in time, the charge she eventually filed with the federal enforcement agency, the EEOC, is also time-barred. Defendant argues next that because summary judgment as to plaintiff's federal claim is warranted, the court lacks a basis to assert pendent jurisdiction over plaintiff's related state law claims. For the reasons set forth below, defendant's motion is denied.

To warrant summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008 (6th Cir.1976). If no genuine issue as to any material fact is established and the moving party is entitled to a judgment as a matter of law, summary judgment may be granted. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979); *Chavez v. Noble Drilling Co.,* 567 F.2d 287 (6th Cir.1978).

In determining whether or not there are issues of fact requiring trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits, and depositions] must be viewed in a light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bohn v. Aluminum and Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962). Furthermore, summary judgment may be inappropriate where contradictory inferences may be drawn from undisputed facts. *United States v. Diebold, supra.* In making this determination, the court must make reference to the entire record, and all well-pleaded allegations are to be accepted as true. *Daco Corp. v. Goodyear Tire and Rubber Co.,* 523 F.2d 389 (6th Cir.1975).

## I. TIMELINESS OF PLAINTIFF'S SUIT UNDER THE ADEA

The parties do not dispute that plaintiff was terminated on February 25, 1981. Nor is it disputed that she did not file her charge of age discrimination with the Michigan Department of Civil Rights until November 3, 1981, 251 days after her termination by defendant. Plaintiff then filed her charge of age discrimination with the EEOC two days later, or 253 days after having been terminated. The timeliness of plaintiff's suit depends upon whether her claim is governed by the extended filing provisions of 29 U.S.C. § 626(d)(2).

Section 626(d) of the ADEA provides: "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State Law, whichever is earlier."

Section 633(b) in turn states:

"In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such

914

proceedings have been earlier terminated . . . ."

■ Section 633(b) affects the timing of proceedings in states known as "deferral" states. A deferral state is one that provides a state law equivalent to the ADEA. *DePriest v. Seaway Food Town, Inc.*, 543 F.Supp. 1355 (E.D.Mich.1982). In such states an aggrieved person must first present a claim to the state agency. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). By reason of the Elliott-Larsen Act, M.C.L.A. §§ 37.-2201–37.2804, Michigan is a deferral state. *DePriest v. Seaway Food Town Inc., supra.* The timeliness of plaintiff's suit then depends upon whether she complied with the requirements of section 633(b). If this is so, then she may be entitled to the extended filing times provided by section 626(d)(2).

The Elliott-Larsen Act does not specify when charges of age discrimination must be filed with the state. As authorized by the Act, however, the state agency has ruled that, to be timely, charges must be filed with the state agency within 180 days of the allegedly discriminatory act. M.C.L.A. § 37.2602; Administrative Code 1969 R 37.-4(6). Because plaintiff did not file her charge with the Michigan agency until 251 days after her allegedly discriminatory termination, her charge, defendant claims, was not timely filed with the state agency. Plaintiff has purportedly failed to comply with the requirements of section 633(b) of the ADEA. As a result, defendant claims, plaintiff is not entitled to file under the extended time limits of section 626(d)(2), but is instead governed by subsection one of that section. Because plaintiff filed her charge with the EEOC 73 days after the 180-day deadline fixed by section 626(d)(1), she is barred from bringing a civil suit under the ADEA.

The crucial question is whether filing with the Michigan Department of Civil Rights after its deadline bars plaintiff's civil suit. Analysis of this question should begin with consideration of *Oscar Mayer & Co. v. Evans, supra.*

In *Evans,* the Supreme Court held that, at least where the state statute of limitations was shorter than the 180 days allotted by section 626 of the ADEA, a grievant is not required to "commence state proceedings within time limits specified by state law." *Id.* at 753, 99 S.Ct. at 2070. The grievant in *Evans* had failed to file with the appropriate state agency in a deferral state; the defendant there argued that the grievant could not remedy his omission, and that the claim was jurisdictionally barred from federal court. In holding that the grievant could remedy his failure to file with the state agency, the Court stated that:

"there is no requirement that, in order to commence state proceedings and thereby preserve federal rights, the grievant must file with the State within whatever time limits are specified by state law. Rather, use of the word 'commenced' strongly implies the opposite—that state limitations periods are irrelevant—since, by way of analogy, under the Federal Rules of Civil Procedure even a time-barred action may be 'commenced' by the filing of a complaint."

*Id.* at 759, 99 S.Ct. at 2073.

*Evans* differs factually from the case at bar in that there, unlike the instant case, the state statute of limitations was shorter than the federal rule. The rationale of the case is nonetheless controlling. In essence, *Evans* seeks to give full effect to the law passed by Congress. Congress designed the ADEA so people could exercise both state and federal rights when they co-exist. That is why Congress allowed for "deferral" states, and why Congress gave deferral state grievants more time in which to file their federal claims. *Oscar Mayer & Co. v. Evans, supra* at 762, 99 S.Ct. at 2074.

*Evans* essentially prevents state statutes of limitation from having the double effect of determining not only when state claims become stale, but also when a federal right may be exercised.

The same result will be reached in the instant case if plaintiff's federal claim is not barred because her state claim is stale. Nor, as in *Evans,* will the state limitations

rule be nullified. Plaintiff's claim may be time-barred for purposes of relief under state law. However, when a court finds that a federal claim is not stale because the state claim was time-barred, the state claim is not being revived. Thus, the state limitations rule, and the purposes it embodies, are not impaired. The federal rule and its goals are also left unaffected. Consequently, as in *Evans,* exercise of both state and federal rights is harmonized.

The Supreme Court's summary reversal of two Circuit Court opinions also sheds light on the role played by state statutes of limitations. *Ciccone v. Textron, Inc.,* 616 F.2d 1216 (1st Cir.1980), *vacated* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143, 651 F.2d 1 (1st Cir.1981), and *Ewald v. Great Atlantic & Pacific Tea Co., Inc.,* 620 F.2d 1183 (6th Cir.1980), *vacated* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143; *reversed and remanded* 644 F.2d 884 (6th Cir.1981), were both summarily reversed and remanded for reconsideration in light of *Mohasco Corp. v. Silver,* 447 U.S. 807, 815, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980). Both *Ciccone* and *Ewald* had stated that a grievant had to file with a state agency within the state agency's time limits in order to proceed with an EEOC charge and a civil suit under section 626(d)(2).

*Mohasco* presented a case under 42 U.S.C. § 2000e–5(c) and (e) ["Title VII"], rather than one under the ADEA, but the two statutes have long been deemed similar enough so that interpretations of one are pertinent to interpretations of the other. *Mohasco Corp. v. Silver, supra* at 814 n. 16, 100 S.Ct. at 2490 n. 16; *Bertsch v. Ford Motor Co.,* 415 F.Supp. 619 (E.D.Mich.1976). In *Mohasco,* the Court held that a Title VII claimant was allowed to sue under that statute's extended filing period regardless of the claimant's failure to seek a state administrative remedy within 180 days of the act giving rise to the claim.

Despite the relatedness of Title VII and the ADEA, there are features of *Mohasco* that, but for the Court's disposition of *Ewald* and *Ciccone,* would undercut its applicability to the case at bar. For example, *Mohasco* did not treat a claim "stale" under the state statute of limitations. Furthermore, not all of the ADEA cases discussed in *Mohasco* determined whether claims could be barred when a claimant filed outside of a state limitations period that was 180 days long.[1] With reference to the Title VII provision similar to ADEA section 626(d), however, the Court stated:

"This language has been construed to require that the filing with the state agency be made within 180 days. Although that construction is consistent with the general rule announced at the beginning of § 706(e) [of Title VII] ... Congress has included no express requirement that state proceedings be initiated by any specific date in the portion of the subsection that relates to time limitations in deferral States....

In any event, we do not believe that a court should read in a time limitation provision that Congress has not seen fit to include, at least when dealing with a 'statutory scheme in which laymen, unassisted by trained lawyers initiate the process.' ... [T]he construction of the statute we adopt today ... is ... compelled by the plain meaning of the statutory language."

The Court's remarks must influence the analysis of similar questions arising under a similar statute. Those comments and the Court's treatment of other ADEA cases in *Mohasco* in fact moved the *Ciccone* court to reverse itself and hold that, whether or not an ADEA grievant filed timely with the state agency, "the longer period of 300 days [provided by section 626(d)(2) ] is to be allowed for federal filing in deferral states." 651 F.2d 1, 2 (1st Cir.1981). The courts of other circuits have reached similar conclu-

---

1. In footnotes 16 and 19, the Supreme Court disparaged the "restrictive" views taken by some courts regarding the effect to be given state limitations periods. 447 U.S. 807, 814–16 nn. 16, 29, 100 S.Ct. 2486, 2491–94 nn. 16, 29, 65 L.Ed.2d 532. However, the Court's discussion may have directed criticism at cases that did not validate state limitations periods that were longer than 180 days.

sions. *See e.g., Davis v. Calgon Corp.,* 627 F.2d 674 (3d Cir.1980), *cert. denied* 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827, *petition for rehearing denied* 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981); *Aronsen v. Crown Zellerbach,* 662 F.2d 584 (9th Cir. 1981); *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1979).

In *DePriest v. Seaway Food Town, Inc.,* 543 F.Supp. 1355 (E.D.Mich.1982), the court held that an ADEA claimant must file timely with the state enforcement agency in order to proceed under the extended time limits of section 626(d)(2). The *DePriest* court, however, did not explore how *Mohasco* affects this question, and preferred to rely on earlier Eastern District precedents. *Id.* at 1361, 1362. That factor reduces the persuasiveness of the *DePriest* court's conclusions.[2]

 Even though I find that a grievant need not file timely with the state agency in order to proceed under section 626(d)(2), that does not mean that the state proceeding is optional, or that it may be brought at any time. In view of *Oscar Mayer* and *Mohasco,* the state proceeding *must* be brought, and the time limitations set by section 626(d)(2) set the final deadlines for proceedings. In *Mohasco,* the Supreme Court found that, while a Title VII claimant could file a grievance without regard to the state limitations period, the federal limitations period of section 706(b) determined what federal claims were timely. 447 U.S. 807, 816–18, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532. Consequently, in the instant case, plaintiff's federal claims are timely because they were presented to both the state and federal agencies in compliance with section 626(d)(2).

## II. DISMISSAL OF PENDENT ´STATE LAW CLAIMS

Defendant has also moved for summary disposition of plaintiff's state law claim under the Elliott-Larsen Act and under state contract law. For the following reasons, I deny defendant's motion.

In *Gibbs v. United Mine Workers, supra,* the Supreme Court stated that a federal court may hear state law claims where the court has the "power" to hear such claims, and where it is also appropriate to hear them in a federal forum. In the instant case, the power exists: a valid federal claim is presented in plaintiff's complaint, and the state law claims arise from the same occurrence. Whether it is appropriate to hear these claims must be determined with reference to factors noted in *Gibbs.*

"It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [Also], if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."

 In the instant case, after considering the factors highlighted in *Gibbs,* I find it appropriate to retain jurisdiction over the state law claims presented in this action. First of all, judicial economy will doubtless be served by retaining these claims. Duplicative pleading will be avoided, as will the presentation in two courts of the same facts. Convenience of the parties may thus be served by saving them the unnecessary burden of proceeding simultaneously in two courts. I can also find no reason why it would be unfair to proceed with these claims in this court.

There is only one factor weighing against retention of the state law claims in this court. That is the problem presented when

**2.** Also see, *Lowell v. Glidden-Durkee, Div. of* *SCM Corp.,* 529 F.Supp. 17 (N.D.Ill.1981).

a federal court applies unsettled state law. One lower Michigan court, in an unpublished opinion, has held that the Elliott-Larsen Act is unconstitutional.[3] This fact has lead one court of this district to decline to exercise pendent jurisdiction, finding it "more fair" to the litigants to have the question of the constitutionality of the Elliott-Larsen Act decided by a Michigan court.[4] An earlier Eastern District opinion similarly declined to exercise pendent jurisdiction over a claim arising under the statute preceding the Elliott-Larsen Act where one lower Michigan court had cast doubt on the validity of the claim asserted, and no Michigan court had authoritatively resolved the question. *Looney v. Commercial Union Assurance Companies,* 428 F.Supp. 533 (E.D.Mich.1977). And it is well-settled that it may be inappropriate for a federal court to exercise pendent jurisdiction when that would necessitate resolving "difficult" questions of state law "upon which state court decisions are not legion." *Moor v. County of Alameda,* 411 U.S. 693, 715–16, 93 S.Ct. 1785, 1798, 36 L.Ed.2d 596 (1973).

In the instant case, however, I do not find that these considerations make it inappropriate to hear the state law claims in this court. First of all, in a carefully reasoned opinion, one court of this district has found the Act to be constitutional under Michigan law. *Thompson v. Board of Education of Romeo Community Schools,* 519 F.Supp. 1373 (W.D.Mich.1981). Furthermore, although a higher Michigan court has not yet determined whether the Elliott-Larsen Act is constitutional or not, the dearth of Michigan cases supporting the Oakland County Circuit Court's reading of the Act casts some doubt on the validity of its reasoning. Additionally, the factor of applying relatively unsettled state law is but one of those to be considered in determining the propriety of exercising pendent jurisdiction. Considered with the factors noted above, I find that the weight of factors favors the use of pendent jurisdiction here.[5]

For these reasons, I deny defendant's motion to dismiss the pendent state law claims presented in plaintiff's complaint.

---

3. Civil Action No. 79–185767–CZ (Oakland Co. Cir. Ct., September 9, 1979).

4. *Cunningham v. Yamaha International, d/b/a Everett Piano Co.,* No. K80–718 CA (W.D.Mich. August 30, 1982 unpublished opinion).

5. As noted earlier, at pp. 5, 7, *supra,* plaintiff's claim under the Elliott-Larsen Act appears to be time-barred. If this factor is subsequently raised by defendant, it may also affect whether the exercise of pendent jurisdiction is appropriate.