Frances HUSCH, Plaintiff–Appellant,

v.

SZABO FOOD SERVICE COMPANY, Defendant–Appellee.

No. 87–2032.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1987.

Decided July 13, 1988.

Rehearing Denied Aug. 19, 1988.

Christopher W. Bohlen, Blanke, Norden Barmann & Bohlen P.C., Kankakee, Ill., for plaintiff-appellant.

Lawrence A. Reich, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., for defendant-appellee.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Frances Husch filed a complaint for damages alleging that Szabo Food Service Company ("Szabo") discharged her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Under the ADEA, if a discriminatory act occurs in a "deferral state"—a state that has an agency authorized "to grant or seek relief from such discriminatory practice"— the complainant must begin proceedings with the proper state agency as a precondition to filing a lawsuit in federal court. 29 U.S.C. § 633(b).[1] The district court held that Husch failed to satisfy the requirements of § 633(b) and therefore granted Szabo's motion to dismiss Husch's action pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] Because Husch made a reasonable attempt to satisfy the ADEA's preconditions for filing this action, we hold that the time limitations for satisfying these preconditions should be equitably tolled. We therefore reverse the judgment of the district court dismissing Husch's action.

I.

Szabo operates employees' food service facilities (usually cafeterias) for a variety of companies nationwide. While its corporate headquarters are in Oak Brook, Illinois, Szabo divides its national operation into various regions. Frances Husch worked for Szabo as a training supervisor from 1966 until March, 1983. In that capacity Husch was responsible for setting up food service operations at new locations and helping to correct problems that arose in existing operations. Husch was not a full-time employee, she was simply called in when her training services were needed. Husch preferred to work for two weeks and then remain unassigned for two weeks; during her last few years with Szabo, however, she worked less than her goal of 26 weeks a year.

Although Husch lived in Illinois, Szabo routinely assigned her to other regions where her services were needed. While assigned to a particular region, she worked under the supervision of the regional vice president. During her last year of employment with Szabo, Husch worked in California for two weeks, for three weeks in Texas, and in Szabo's eastern region (primarily in Connecticut) for eight weeks. Her last assignment, which ended in December, 1982, was in the eastern region under the supervision of Regional Vice President Wayne Burke.

Husch did not receive any additional assignments following the completion of her work in Connecticut in December, 1982.

---

1. 29 U.S.C. § 633(b) provides in relevant part that:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated....

2. The district court treated Szabo's motion to dismiss Husch's action as a motion under Rule 12(b)(1) because the court had to make specific findings of fact before it could determine whether the action should be dismissed. Specifically, the district court had to decide where the alleged discrimination occurred in order to determine whether the complaint that Husch filed with the Illinois Department of Human Rights satisfied the requirements of § 633(b).

She tried on numerous occasions to contact Michael Cronk, the Corporate Vice President who she thought was her supervisor, to inquire about her lack of new assignments. Cronk, who worked in the company's corporate headquarters in Oak Brook, Illinois, never returned her telephone calls. In January, 1983 Husch contacted Wayne Burke and asked him for full-time employment. Burke told her that he could provide her with a full-time position if she would agree to relocate to Connecticut. Husch refused Burke's offer because she did not want to relocate.

In February, Husch wrote to Burke complaining that she could not reach Cronk and asking if she still had a job with Szabo. Burke failed to respond to her letter. In March, Husch decided to visit Szabo's corporate offices to make further inquiries about her employment situation. When Husch arrived in Oak Brook, Cronk was unavailable; Husch therefore spoke with John Zillner, the Director of Operating Systems. Because Zillner had never met Husch and was unfamiliar with her employment situation, he called Cronk to ask him for instructions. Cronk told Zillner to contact Burke and find out about Husch's situation before meeting with her. Zillner testified that when he called Burke, Burke told him that Husch had asked for full-time work and he had informed her that it was available only if she would relocate to the eastern region, which she was unwilling to do. According to Zillner's testimony, he then met with Husch, related Burke's offer to her, and told her that if it was not acceptable she should contact either Burke or Cronk.[3] In contrast, Husch testified that Zillner told her that she was no longer going to be employed by Szabo because they did not have enough work to meet her needs. On March 14, 1983 Burke sent Husch a letter confirming that he had spoken with Zillner and expressing regret that Husch was leaving Szabo. Burke testified that it was his understanding that Husch was leaving Szabo voluntarily, not that she had been fired. He also indicated that he did not intend to discharge Husch, nor did he believe that he had the authority to do so.

Illinois is a deferral state, and thus if Szabo discriminated against Husch in Illinois she was required under § 633(b) to file an initial complaint with the appropriate Illinois agency. As a result, one month after Husch received Burke's letter she filed a complaint with the Illinois Department of Human Rights ("IDHR"); her complaint referenced Burke's March 14 letter as evidence of her allegedly discriminatory discharge. The IDHR dismissed Husch's complaint for lack of jurisdiction because she had not worked for pay in Illinois during the 180 days preceding her alleged discriminatory discharge. This requirement, however, is not related to the ADEA's precondition for filing suit that is at issue in this case.

To determine whether or not Husch satisfied the statutory prefiling requirements of § 633(b), the essential question is in what state did the alleged discriminatory act occur? The district court concluded that although Cronk might have had the authority to discharge Husch, he did not take any adverse action against her that could be construed as a discriminatory act.[4] The district court found that the only alleged discriminatory act was Burke's letter of March 14 which was sent to Husch from Burke's office in Connecticut. Connecticut, like Illinois, is a deferral state. Although Husch filed a complaint with the IDHR, she did not file with the appropriate Connecticut agency. Thus, the court concluded that she failed to satisfy the requirements of § 633(b) because she did not file with the

---

**3.** In his deposition, however, Zillner testified that he told Husch to contact Cronk only, rather than to communicate with either Cronk or Burke.

**4.** The evidence at trial regarding the chain of command at Szabo and who had authority to terminate Husch (if in fact she was terminated) was contradictory. It is clear that Husch thought that Cronk was her supervisor, and that most of the regional vice presidents believed that only Cronk had the authority to discharge Husch. In contrast, Szabo's organizational charts, which were prepared before this lawsuit was filed, indicated that Husch was to report to Burke and that he was solely responsible for her supervision.

appropriate state agency in the state in which the discrimination occurred. The court therefore dismissed her lawsuit. 662 F.Supp. 1291.

## II.

The purpose of the ADEA, like Title VII, is to eliminate discrimination in the work place. The statutory schemes of both the ADEA and Title VII are designed to allow laymen to initiate the process unassisted by lawyers. *Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1971). As a result, it is particularly inappropriate to undermine the effectiveness of these statutes by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the statute. The ADEA is "humanitarian legislation that should not be construed in a hypertechnical manner." *Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1112 (7th Cir.1984).

■ Under 29 U.S.C. § 626(d) all ADEA claimants must file a complaint with the EEOC and then wait sixty days from the filing date before bringing an action in federal court.[5] An ADEA plaintiff who is discriminated against in a deferral state is also required under § 633(b) to pursue available state administrative remedies for the alleged discrimination before he or she can bring an action in federal court. The purpose of this precondition is to provide the states with an opportunity to eliminate the discrimination without federal court intervention. *Smith v. General Scanning,*

*Inc.*, 832 F.2d 96, 98 (7th Cir.1987) (*citing Heiar v. Crawford County*, 746 F.2d 1190, 1195 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985)). In a deferral state the plaintiff must file a complaint with the EEOC within 300 days of the alleged discrimination. A deferral state complainant, however, may not satisfy the requirements of § 626(d) until either thirty days has elapsed since the plaintiff began his or her proceedings with the state agency or that agency has indicated that it terminated its proceedings.[6]

In the present case, Husch filed a charge with both the IDHR and the EEOC within the applicable time limitations. The district court found, however, that the only alleged discriminatory act occurred in Connecticut, not Illinois. As a result, the court concluded that Husch's IDHR filing was insufficient to satisfy the preconditions of § 633(b) because she failed to file a complaint with the appropriate state agency in the state (Connecticut) where the discrimination occurred.

■ We review the district court's factual finding that the alleged discrimination occurred in Connecticut under the clearly erroneous standard. We must therefore accept this finding of fact unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We cannot reverse the district court even if we are convinced that

---

**5.** In relevant part, 29 U.S.C. § 626(d) provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

**6.** Each state sets its own time limits within which a complaint must be filed with the state agency. This state filing, however, need not be

timely under state law in order to satisfy the ADEA, provided the 300 day limitations period for filing with the EEOC is met. *Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622, 625 (7th Cir.1985). For instance, if a state sets a 90 day time limit for filing a complaint with the authorized state agency, an ADEA plaintiff can satisfy the requirements of § 633(b) even by filing with the state agency more than 90 days after the alleged discriminatory act, provided he or she waits thirty days before filing with the EEOC (or the state terminates its proceedings) and the EEOC filing still occurs within 300 days of the alleged discrimination. *See EEOC v. Commercial Office Prod. Co.*, —— U.S. ——, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (Title VII); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1978) (ADEA).

had we been "sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Because the district court made a reasonable choice between two competing views of the evidence, we conclude that the district court's finding that the alleged discriminatory acts occurred only in the state of Connecticut is not clearly erroneous.

### A.

We have recently held that the ADEA's preconditions for filing a lawsuit were not satisfied when an employee filed a complaint with an appropriate state agency in the wrong state. *General Scanning*, 832 F.2d at 100. Accepting the district court's factual finding that the only alleged discrimination occurred in Connecticut, it is clear that Husch filed her complaint in the wrong state. Husch's case, however, is significantly different from related cases involving ADEA plaintiffs who filed a valid complaint in an incorrect state.

In *General Scanning*, for example, Smith worked for General Scanning's office in Boston until he was transferred to its regional office in Chicago. *Id.* at 97. Two years after his transfer, Smith received a termination notice informing him that General Scanning was closing its entire Chicago sales office. Smith, who was sixty years old at the time of his termination, filed a complaint with the Wisconsin Department of Industry, Labor and Human Relations. Because Wisconsin had no connection to the alleged discriminatory termination, the court concluded that Smith failed to satisfy the § 633(b) requirements for bringing his federal action. *Id.* See also *Cornett v. AVCO Fin. Serv.*, 792 F.2d 447 (4th Cir.1986) (EEOC mistakenly referred plaintiff's complaint to California state agency when plaintiff worked in West Virginia and admitted only discrimination

occurred in West Virginia; § 633(b) not met); *DePriest v. Seaway Food Town, Inc.*, 543 F.Supp. 1355 (E.D.Mich.1982) (section 633(b) not satisfied where plaintiff, who applied for position with Michigan company and was not hired, filed an age discrimination complaint with an Ohio state agency). Unlike the plaintiffs in *General Scanning, Cornett*, and *DePriest*, Husch did not file her complaint with a state agency in a state that was wholly unconnected to the alleged discrimination. Rather, Husch attempted to satisfy the § 633(b) requirements by filing a complaint with the proper state agency in at least one of the states in which a reasonable person could believe that the discrimination occurred.

### B.

█ Although an ADEA plaintiff does not have to comply with the state time limitations to satisfy the ADEA's preconditions for filing a federal action, the complainant must at least initiate state proceedings. *Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622, 625 n. 3 (7th Cir.1985). "[R]esort to administrative remedies in deferral States by individual claimants is mandatory, not optional." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1978). The administrative exhaustion requirements of § 633(b), however, are not a jurisdictional prerequisite to bringing an action in federal court, but rather just a precondition to filing a lawsuit. *General Scanning*, 832 F.2d at 99; *Stearns*, 747 F.2d at 1111. These preconditions are therefore subject to waiver, estoppel, and equitable tolling.[7]

█ Justice requires that we suspend the running of the limitations period ("equitable tolling") in the present case because Husch reasonably tried to assert her rights in a timely fashion, she simply failed to assert them in what was later determined

---

7. Similarly, the Supreme Court has recognized that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*

*v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). The district court did not discuss the propriety of applying any of these equitable doctrines in this case.

to have been the only proper forum. *See Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir.1984) (per curiam) (equitable tolling justified when claimant makes a good faith error, such as filing in the wrong court); *Kocian v. Getty Refining & Mktg. Co.*, 707 F.2d 748, 753 (3rd Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983) (equitable tolling appropriate if plaintiff timely asserts his or her rights in the wrong forum); *Grudowski v. Butler Paper Co.*, 670 F.Supp. 242, 248 (N.D.Ind.1987) (same). Husch reasonably thought that she was discriminated against in Illinois and filed with the agency that would have been appropriate if her assumption of where the discrimination occurred had been correct. She should not be penalized with the dismissal of her ADEA action simply because she was unable to decipher the contradictory and confusing corporate structure of Szabo Foods in order to determine the exact state in which she allegedly was discriminated against.[8] We should not require an ADEA plaintiff in a close case to determine, at peril of having his or her lawsuit dismissed, precisely where the alleged discriminatory act occurred. Moreover, Szabo does not allege that it was misled to its detriment by Husch's incorrect state filing. Husch's reasonable attempt to comply with the ADEA's precondition for filing a federal lawsuit justifies the application of equitable tolling in this case.

■ We therefore conclude that the limitations period for filing a complaint with the appropriate Connecticut state agency should be tolled from the date on which Husch filed her complaint with the IDHR. We reverse the judgment of the district court and remand the case with instructions to hold Husch's action in abeyance pending her compliance with the state filing requirements of § 633(b).[9] We express no opinion on the merits of Husch's discrimination claim, or the proper venue for this action once § 633(b) is satisfied by the filing of a complaint with the Connecticut state agency. The judgment of the district court dismissing Husch's complaint for failure to comply with the § 633(b) of the ADEA is REVERSED and REMANDED.

---

8. We disagree with the appellee's assertion that the IDHR's dismissal of Husch's complaint should have clarified the fact that the proper place to file her complaint was Connecticut, and that her failure to do so after her IDHR complaint was dismissed should bar this action. The IDHR dismissed Husch's complaint because she had not worked in the State of Illinois during the 180 days preceding the filing of her charge. This requirement is irrelevant under the ADEA. If anything, the IDHR's dismissal of her charge, which she unsuccessfully appealed, probably led Husch to conclude that her only recourse was in the federal courts.

9. As the Supreme Court has noted, it is preferable to suspend the proceedings in these situations rather than dismiss the case and require the plaintiff to refile. *Oscar Mayer*, 441 U.S. at 765 n. 13, 99 S.Ct. at 2076 n. 13. "To require a second 'filing' by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love*, 404 U.S. at 526–27, 92 S.Ct. at 619. As a result, the preferred practice in the federal courts is suspension pending satisfaction of the preconditions for filing the action. *Oscar Mayer*, 441 U.S. at 765 n. 13, 99 S.Ct. at 2076 n. 13.

We note, however, that in *General Scanning* this court dismissed the plaintiff's action for failure to satisfy the requirements § 633(b), indicating that the plaintiff could always refile his complaint with the appropriate state agency and the EEOC. If Smith then refiled his federal court action, he would have to plead and prove equitable grounds for tolling because the 300 day time limitation had already expired. *General Scanning*, 832 F.2d at 100. Because the propriety of tolling the time limitations is clear in this case, we will not impose upon Husch the technical requirement of refiling this action. In the present case, it is more appropriate to adopt the Supreme Court's preferred practice of simply suspending this action pending satisfaction of the state filing requirements of § 633(b).