**George T. GREANIAS, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., INC., Defendant.**

**Vincent O. HAYNES, Plaintiff,**

v.

**ALUMAX RECYCLING GROUP, INC., et al., Defendants.**

**Nos. 88 C 1367, 88 C 7046.**

United States District Court, N.D. Illinois, E.D.

Oct. 21, 1988.

Robert S. Bell, Jr., Cosby & Bell, Chicago, Ill., for plaintiff George T. Greanias.

Leon M. Despres, Judith A. Teeter, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiff Vincent Haynes.

Gerard C. Smetana, James V. Daffada, Abramson & Fox, Chicago, Ill., for defendant Sears, Roebuck & Co.

Raymond J. Kelly, Thomas J. Piskorski, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants Alumax Recycling Group, et al.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These two actions, brought independently under the Age Discrimination in Employ-ment Act ("ADEA"), 29 U.S.C. §§ 621–634,[1] have coincidentally and simultaneously posed the identical legal problem. Each defendant ex-employer has contemporaneously moved to dismiss its ex-employee's Complaint on grounds of untimeliness, asserting the former employee did not comply with the statutory prerequisite of filing a timely Equal Employment Opportunity Commission ("EEOC") charge before bringing suit. For the reasons stated in this memorandum opinion and order, each ex-employer's motion is denied.[2]

### Facts[3]

After George Greanias ("Greanias"), plaintiff in 88 C 1367, and Vincent Haynes ("Haynes"), plaintiff in 88 C 7046, were terminated from their respective jobs, each went to EEOC to complain of what he perceived as age-motivated discrimination. Each discussed with an EEOC representative the facts assertedly demonstrating age discrimination that had caused his termination (Greanias also filled out and signed the EEOC Intake Questionnaire form he was given for that purpose by the EEOC representative, while Haynes furnished only an oral version of what had happened). Neither Greanias nor Haynes was given the formal EEOC Charge of Discrimination form (EEOC Form 5) to complete and sign.

1. ADEA citations will take the form "ADEA §—," using the Title 29 numbering rather than ADEA's internal numbers. Citations to the corresponding regulations in 29 C.F.R. will take the form "Reg. §—," using the numbering in that C.F.R. title.

2. *Haynes* has been fully briefed and the status hearing (in this instance, the date for announcement of this Court's ruling) has previously been set for today, October 21. As for *Greanias,* ex-employer Sears, Roebuck and Co. ("Sears") had filed its motion to dismiss and an accompanying memorandum September 7, to which a responsive memorandum was filed September 27, with Sears' reply due October 20. This opinion was accordingly prepared in draft October 20, pending receipt of Sears' reply memorandum. Two things then occurred in rapid succession:

    1. At 4:30 p.m. October 20 this Court received a proposed stipulation of the parties in *Greanias* to extend the time for filing that reply memorandum to October 27.

    2. During the evening of October 20 this Court read the just-received slip opinion of our Court of Appeals in *Steffen v. Meridian Life Ins. Co.,* 859 F.2d. 534, (7th Cir.1988). In still another instance of the serendipity this Court has encountered with surprising frequency since coming to the bench, *Steffen* treats directly with the issue presented by *Greanias* and *Haynes* and dealt with in this opinion. Consequently this opinion has been modified by adding the three-page section dealing with *Steffen,* beginning at page 1028 with the sentence:

    All this would call for denial of both motions here even without reference to *Steffen.*

And as is surely appropriate in light of *Steffen,* this opinion is being issued in both *Greanias* and *Haynes,* without awaiting the *Greanias* reply memorandum.

3. In 88 C 1367 Sears challenges subject matter jurisdiction under Fed.R.Civ.P. ("Rule") 12(b)(1), while in 88 C 7046 the three corporate defendants move for dismissal under Rule 12(b)(6) for failure to state a cause of action. In each instance the legal ground relied on calls for the factual version advanced by the ex-employee to be credited.

It was only on later inquiry that both Greanias and Haynes learned of the lack of the formal Form 5. In each instance the ex-employee provided a completed and signed Form 5 to EEOC, but in each instance that took place more than 300 days after the allegedly age-discriminatory termination—in Greanias' case 303 days, in Haynes' case 348 days.

### ADEA's Statutory Filing Requirement

■ ADEA § 626(d) reads in relevant part:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
>
> \*     \*     \*     \*     \*     \*
>
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Failure to file a timely charge bars a later lawsuit (*Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410 (7th Cir.1984)) unless equitable reasons toll the running of the 300-day charge-filing period (*Smith v. General Scanning, Inc.*, 832 F.2d 96, 99 (7th Cir.1987)). In each of these cases it is unnecessary to deal with the ex-employee's claim in the latter respect, however, because the statute itself has not been breached.

### "Charge" Filing with EEOC

This Court's opinion in *Proffit v. Keycom Electronic Publishing*, 625 F.Supp. 400, 403–05 (N.D.Ill.1985) held an Intake Questionnaire—another EEOC form used to obtain information from aggrieved persons, but one without any provision for an oath or affirmation by the complainant—did not constitute a "charge" under the related statutory provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(b). *Proffit* wrote on an almost clean slate: At the time the only other reported decision to have dealt with the issue was *Casavantes v. California State University, Sacramento*, 732 F.2d 1441 (9th Cir.1984), a case whose reasoning this Court found unpersuasive.

Post-*Proffit* cases, a number of them decided by this Court's colleagues sitting in this District, have followed its lead rather than *Casavantes*.[4] Most recently Judge Bua has done so directly in *Sparkman v. Combined International*, 690 F.Supp. 723, 724 (N.D.Ill.1988), and Judge Duff (in *EEOC v. Calumet Photographic, Inc.*, 687 F.Supp. 1249, 1250–54 (N.D.Ill.1988)) has also recognized the *Proffit* principle but has distinguished the situation where EEOC, rather than the individual victim of discrimination, brings suit on an "unperfected" (that is, unsworn) charge.

During the past few months our Court of Appeals has evinced a strong disinclination to apply ADEA as written, instead favoring applications that are perceived as producing equitable results (see, e.g., *Overgard v. Cambridge Book Co.*, 858 F.2d 371, 374–375 (7th Cir.1988); *Husch v. Szabo Food Service Co.*, 851 F.2d 999, 1002–04 (7th Cir.1988)).[5] Indeed, *Husch* applied equitable tolling principles to save a plaintiff from the consequences of her statutory default even though the equitable tolling argument had never been made before the

---

**4.** Until the just-decided *Steffen* case, our Court of Appeals had reserved ruling on the issue in *Gilardi v. Schroeder*, 833 F.2d 1226, 1230 (7th Cir.1987).

**5.** As in so many areas of the law, perspective is everything. In another context—that of constitutional interpretation—the judge who claims to read the text as it is written is called a "strict constructionist," while the advocate of nonliteral reading is labeled an "activist." Yet it would seem there is much less warrant for such judicial lawmaking (such "activism") in the case of a statute (where the congressional opportunity for amendment to deal with the unprovided-for contingency is not a difficult one) than in dealing with the Constitution (where, though changed circumstances could never have been anticipated at the time of original adoption, the amending process is so difficult).

District Court.[6]

But this Court need not decide whether the approach exemplified by *Overgard* and *Husch*—one that speaks of statutory "technicalities" in pejorative terms (*Overgard*, 858 F.2d at 374; *Husch*, 851 F.2d at 1002)—calls for a fresh look at *Proffit*. ADEA's statutory "charge" provision is critically different from that of Title VII—and even before *Steffen* this Court's view was that the difference clearly counsels a different result in the circumstances presented by the cases now under consideration.

Title VII mandates that "[c]harges shall be in writing under oath or affirmation" (42 U.S.C. § 2000e-5(b)). But EEOC's Intake Questionnaire, the document provided by the plaintiff in *Proffit*, does not meet that standard. And this Court found in *Proffit*, 625 F.Supp. at 403 that EEOC could not opt to ignore that statutory requirement, nor of course could it override the statute, by adopting an inconsistent standard in its regulations (in that instance in Reg. § 1601.12(b)).

■ By contrast, ADEA § 626(d) is conspicuously silent as to the formal requirements of a "charge"—it simply uses that term without any attempt at definition and without requiring an oath or affirmation. That being so, there is no reason that the EEOC regulations that prescribe the ADEA charging procedure and form (or lack of form) should not be fully honored. In that respect Reg. §§ 1626.6 and 1626.8 provide in relevant part:

### § 1626.6   Form of charge.

A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing.

### § 1626.8   Contents of charge; amendment of charge.

Notwithstanding the provisions of paragraph (a) of this section [prescribing what a charge "should contain" in addition to the § 1626.6 requirements], a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of § 1626.6.

Both Greanias and Haynes clearly met those regulatory standards in their initial visits to EEOC. Greanias gave EEOC all the required information in his signed Intake Questionnaire and accompanying materials on August 8, 1986, less than 180 days after his discharge. And Haynes gave the necessary information to the EEOC representative orally on September 11, 1987, less than 150 days after his termination. Accordingly this Court determines the administrative precondition to suit—the timely filing of an EEOC "charge"—has been satisfied in each of these cases.

All this would call for denial of both motions here even without reference to *Steffen*. And *Steffen*, 859 F.2d at 543-44 squarely calls for the same result: It holds that "[u]nder the facts as alleged by Steffen [facts that are the legal equivalent of those alleged here by both Greanias and Haynes], it would be a needless triumph of form over substance to hold that [what Steffen did at the EEOC office, again the legal equivalent of what both Greanias and Haynes did there] did not satisfy the ADEA's charge-filing requirement" (*id.* at 543).

*Steffen, id.* at 544 also properly criticizes the inconsistencies in EEOC's method of handling assertions of age discrimination brought to it by the putative victims of

---

**6.** There was no hint of that in the Court of Appeals opinion, but this Court's recollection was that the plaintiff in *Husch* had not even hinted at a request for equitable tolling relief to erase the effects of her failure to file any charge at all in the proper State. When the first post-remand status hearing was held in *Husch*, counsel confirmed this Court's recollection in that regard. Wholly apart from the desirability of granting such equitable relief on the merits, one would at least expect an appellate court to reflect that the issue had not been presented to the district court and to explain just why such a perceived equitable consideration should override the normal rule against an appellant's raising a contention on appeal that has never been advanced below.

such discrimination. But two aspects of the *Steffen* analysis in the course of reaching its unexceptionable conclusion appear to merit some further comment.

First, *Steffen* relegates to en passant footnote treatment (859 F.2d at 543 n. 1) the critical statutory difference, already discussed in this opinion, between the "charge" requirement under Title VII (which specifically calls for filing "under oath or affirmation," 42 U.S.C. § 2000e–5(b)) and the corresponding ADEA requirement (which simply calls for filing a "charge" without further elaboration, ADEA § 626(d)). Conventional principles of statutory construction teach that such a difference in otherwise comparable language implies an intended difference in meaning. But even apart from such general principles, it is clear—as this opinion has already reflected—that the ADEA locution leaves room (as the Title VII statutory language does not) for EEOC regulations that permit a "charge" to be less formal than the "under oath or affirmation" document exemplified by EEOC's Form 5 "Charge of Discrimination."

Second, *Steffen* rests in material part on the distinction between a "charge" and a "complaint," as those terms are defined in the "Other Definitions" part of the EEOC regulations, Reg. § 1626.3:

"[C]harge" shall mean a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the Act; "complaint" shall mean information received from any source, that is not a charge, which alleges that a named prospective defendant has engaged in or is about to engage in actions in violation of the Act; "charging party" means the person filing a charge; "complainant" means the person filing a complaint; and "respondent" means the person named as a prospective defendant in a charge or complaint, or as a result of a Commission-initiated investigation.

After quoting that first-stated regulatory definition of a "charge" and then quoting the provisions of Reg. §§ 1626.6 and 1626.-8(b) set out earlier in this opinion, the Court of Appeals goes on to say (859 F.2d at 542–43):

[H]owever, the EEOC's regulations make clear that, while a charge is "sufficient" if it names the respondent and generally alleges discrimination, not all documents containing such information are charges. There is no other way to explain the distinction in the EEOC's regulations between a "complaint" and a "charge." A "complaint" is defined to "mean information received from any source, *that is not a charge,* which alleges that a named prospective defendant has engaged in or is about to engage in actions in violation of the [ADEA]...." 29 C.F.R. § 1626.3 (emphasis added). As noted above, a charge is sufficient under the regulation if it names the respondent and generally alleges a discriminatory act. Thus, under these regulations, any document that names a prospective respondent and alleges a violation of the Act falls within the definition of either a complaint or a charge. The regulations, however, only provide that the Commission shall promptly notify a respondent that a *charge* has been filed. 29 C.F.R. § 1626.11. The only plausible reason why the EEOC would consider one communication of information to be a "complaint" and another to be a "charge" is that a "charge" is submitted under circumstances that would lead the EEOC to believe that the complaining party sought to "activate the Act's machinery." Moreover, there is no other plausible reason why the EEOC labels certain forms as "Intake Questionnaires" and other forms as "Charges of Discrimination."

But there is another, and to this Court more plausible and compelling, explanation of the distinction between the two defined terms. Both the "charge" and the immediately-following "complaint" definition in Reg. § 1626.3 share the identical language:

which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the Act.

Where those definitions part company is only in the fact that such allegations in a "charge" must be contained in "a statement filed with the Commission by or on behalf of an aggrieved person," while such allegations in a "complaint" are derived from "information received from any source, that is not a charge." That latter language, in its most normal reading, means information received from some source *other* than the "aggrieved person" himself or herself. Quite understandably, the later requirement of Reg. § 1626.11 for prompt notice to the respondent employer is tied to the filing of a "charge"—an assertion "by an aggrieved person," which would ordinarily appear most likely to ripen into a formal claim and a possible lawsuit.

That just-explained reading, drawn as it is from a juxtaposition of the parallel regulatory language and its plain meaning, affords a principled reconciliation of the "charge" versus "complaint" dichotomy. It also carries with it the necessary consequence that a "charge" (that is, information brought to EEOC by an aggrieved person—say Steffen, Greanias or Haynes) that is reduced to written form (whether by the aggrieved person or EEOC) is "sufficient" as long as it "conforms to the requirements of § 1626.6" (the language of Reg. § 1626.8(b))—and in that sense, "sufficient" must mean that a "charge" has been filed that satisfies the administrative prerequisite under ADEA § 626(d). And what is most significant for present purposes, that analysis meshes perfectly with the conclusion already expressed in this opinion as to the most reasoned link-up between ADEA § 626(d) and the regulations construing it.

But whatever substantive requirements are attached to the concept of a "charge," and however those requirements are derived, *Steffen* correctly points out that

nothing can justify EEOC's inconsistent *handling* of matters brought to the agency. Regulations, like statutes, are drawn by lawyers (and may of course be read most easily by lawyers and judges). However, ADEA "aggrieved persons" who come to EEOC to voice their grievances—people such as Steffen, Greanias and Haynes—find themselves dealing not with the drafters of the regulations but with nonlawyer staff people. And therein lies the rub.

Thus EEOC's administrative personnel (unschooled in the niceties of the regulations) may well perceive only the formal Form 5 "Charge of Discrimination" as being the kind of "charge" that triggers the giving of notice to an employer, followed by EEOC's conciliation efforts. Yet EEOC's intake personnel may (and obviously often do) give an aggrieved person the understanding that even without filling out and signing a Form 5, he or she has done all that is necessary at the administrative agency level to institute a "charge" against his or her employer or ex-employer. And again most importantly for current purposes, that understanding can be entirely correct in light of ADEA § 626(d) and its implementing regulations.[7]

Again all those matters reflect only differences in the route taken, not the destination reached. This Court—both independently before receiving *Steffen* and a fortiori in light of *Steffen*—finds Greanias and Haynes have satisfied the "charge"-filing requirement and therefore denies each ex-employer's motion.

*Conclusion*

Each employer's motion to dismiss is denied. Each is ordered to answer its ex-employee's Complaint on or before November 2, 1988. Each case is set for a status hearing at 9 a.m. November 9, 1988, with

7. If the discussion to this point has not already made it abundantly clear, it should be said expressly that no implication is intended as to whether the *Proffit* analysis needs reconsideration in the Title VII context (where it was announced). This opinion relies on the very different language in the two statutes (42 U.S.C. § 2000e–5(b) and ADEA § 626(d)). As *Proffit*

stated, EEOC's Title VII regulations cannot amend the statute by eliminating the "oath or affirmative" requirement—a problem this opinion holds is not posed by the ADEA regulations. Hence this opinion's heavy reliance on the latter regulations cannot translate into a comparable analysis for Title VII "charge" purposes—the issue that was considered in *Proffit*.

any previously-set status hearing in either case being vacated.