Hazel MORTON, Norman W. Patton, Robin L. Williams, Silas E. Jones, Sandra Kay Marshall, William D. Luby, John D. Howard, Richard S. Kroll, Paul A. Babel, Barbara J. Steffel, Mary I. Vogel, Plaintiffs,

v.

ICI ACRYLICS, INC., Defendant.

No. 99–2006 DV.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 14, 1999.

John J. Heflin, III, Kenneth P. Jones, Bourland Heflin Alarez & Minor, Memphis, TN, Danny L. Curtis, Suzanna L. Trower, The Curtis Law Firm PC, Kansas City, MO, Michael J. Gallagher, Law Office of Michael Gallagher, Kansas City, MO, for plaintiffs.

Stephen X. Munger, Jackson Lewis Scnitzler & Krupman, Atlanta, GA, Lisa A. Schreter, George A. Harper, David S. Fried, Jackson Lewis Schnitzler & Krupman, Atlanta, GA, Jeff Weintraub, Weintraub Stock Bennett Grisham & Underwood, Memphis, TN, Equal Employment Opportunity Commission, Memphis, TN, for defendant.

## ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

DONALD, District Judge.

Before the court are Defendant ICI Acrylics, Inc. (ICI)'s motions to dismiss the Age Discrimination in Employment Act (ADEA) claims of Plaintiffs Hazel Morton (Morton), Paul Babel (Babel), John Howard (Howard), Barbara Steffel (Steffel), Richard Kroll (Kroll), and Mary Vogel (Vogel). There are a total of eleven Plaintiffs in this case. They allege that ICI illegally terminated them on the basis of their age. ICI argues that the ADEA claims of these six Plaintiffs are time barred under 29 U.S.C. § 626(d). For the reasons stated herein, the claims of all six of these Plaintiffs are dismissed.

### I. Background Facts

The parties differ in their application of the law to the facts. The relevant facts of this case are for the most part undisputed. There are eleven Plaintiffs in this case. Each was an employee of ICI. Each was terminated from employment no earlier than 1997. Each was over the age of 40 on the date of termination. Babel and Howard were terminated on May 9, 1997. Steffel was terminated on May 15, 1997. Kroll was terminated on May 23, 1997.

Vogel was terminated on September 15, 1997. Morton was terminated on January 16, 1998.

Plaintiff Norman Patton (Patton) was also terminated on January 16, 1998. Patton was the first discharged employee to file a charge of age discrimination with the EEOC. He filed his charge with the EEOC's Memphis District Office on October 22, 1998. Patton's charge stated, in relevant part:

I, along with others similarly situated, have been terminated by ICI Acrylics Inc. based on age. On January 16, 1998, I was terminated even though I was qualified for my position. I was not offered nor given an opportunity to apply or interview for other positions for which I am qualified. Since August of 1996, when Ross McMillan became president of the company, ICI Acrylics Inc. has implemented and enforced a policy of age discrimination by "reducing" various positions throughout the company occupied by a class of qualified persons over 40, such as myself, and assigning those older individuals' jobs or duties to younger, less-qualified individuals. ICI Acrylics Inc. has engaged in this continuous and systematic policy of discrimination under the pretext of reorganization or restructuring of the company, when in fact, the policy is based on its desire to replace older employees with younger individuals.

(Patton's EEOC Charge of Discrimination, October 22, 1998).

Morton filed an identical age discrimination charge with the EEOC's Memphis District Office on November 6, 1998. Babel, Howard, Steffel, Kroll, and Vogel never filed EEOC charges.

Defendant ICI filed two motions to dismiss. In support of its motions, ICI relies on matters outside the pleadings, including affidavits of ICI Director of Human Resources Thomas Skinta and Doris Woods, Deputy Director of the Memphis District Office of the EEOC.

## II. Motion to Dismiss/Summary Judgment Standard

Where a motion to dismiss relies on matters outside the pleadings, that motion should be converted into a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). ICI's motion to dismiss relies on matters outside the pleadings, and will therefore be treated as a motion for summary judgment.

■ Generally, before converting a motion to dismiss into a motion for summary judgment, the court should provide reasonable notice to allow the plaintiff the opportunity to submit evidence in opposition. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir.1995). However, where the plaintiff responds to the motion to dismiss by also relying on evidence outside the pleadings and by suggesting to the court that the motion be treated as one for summary judgment, no notice is necessary, and no surprise should result from the conversion. *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir.1989). In the instant case, because both parties rely on evidence outside the pleadings, the 'court converts ICI's motion to dismiss into a motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 35 (2d ed. Supp.1996).

■ Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l*, 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible or usable at trial. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721, at 40 (2d ed.1983). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th Cir.1998). Justifiable inferences based on facts are also to be drawn in favor of the nonmovant. *Kalamazoo River*, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

### III. ADEA Standard

The ADEA prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to file suit under the ADEA, a plaintiff must have first filed a claim with the EEOC. 29 U.S.C. § 626(d). The EEOC claim must be filed within a time limit of either 180 or 300 days of the discriminatory act. The applicable time limit depends on the state in which the alleged discriminatory act occurred. If a state has "a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice," it is a "deferral state." 29 U.S.C. § 633(b). An EEOC charge must be filed within 300 days of a discriminatory act occurring in a deferral state. 29 U.S.C. § 626(d)(2). Where the alleged discriminatory act took place in a non-deferral state, the EEOC charge must be filed within 180 days of the act. 29 U.S.C. § 626(d)(1). An EEOC charge filed after the applicable time limit is barred by the statute of limitations. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir.1987).

In certain circumstances, however, the EEOC charge of one plaintiff can satisfy the filing requirement of other plaintiffs, under what is known as the "single filing rule." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir.1995). The single filing rule allows a plaintiff to join an ADEA action if another plaintiff filed a timely EEOC charge. The joining plaintiff can "piggyback" on the timely charge. *Id.* In order for the single filing rule to apply, the joining claim must be substantially related to a timely filed claim which arose out of similar discriminatory treatment in the same time frame. *EEOC v.*

*Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir.1994). The single filing rule is born out of the reason behind the EEOC filing requirement. "[T]he basic purpose of the notice requirement is to provide the EEOC with sufficient information so that it may notify prospective defendants and to provide the EEOC with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation." *Howlett*, 49 F.3d at 195 (internal quotation omitted). Thus a plaintiff can piggyback on a timely filed charge if the charge "contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Id.*

### IV. Analysis

A. Hazel Morton

Plaintiff Morton is the only one of these six Plaintiffs to have filed her own EEOC charge. Morton was terminated by ICI on January 16, 1998. She filed her charge with the EEOC's Memphis District Office on November 6, 1998. Two hundred ninety two days passed between the date of her discharge and the date of her filing. Thus whether she filed a timely charge depends on whether she was subject to the 180–day or the 300–day time limit. The time frame in which an EEOC claim must be filed depends on the state in which the alleged unlawful practice occurred. 29 U.S.C. §§ 626(d), 633(b); *Howlett*, 49 F.3d at 194.

ICI argues that the alleged unlawful practice occurred in Mississippi. Mississippi is a non-deferral state. Thus, if the discriminatory act occurred in Mississippi, the 180–day limit applies, and Morton brought her claim too late. Morton argues that the alleged unlawful act took place in Tennessee. Tennessee is a deferral state, in which the 300–day limit applies. If the discriminatory act occurred in Tennessee, Morton filed her charge prior to the deadline.

The alleged discriminatory act in this case was the termination of Morton. ICI points to the fact that Morton was employed in Mississippi. She was terminated in person in Mississippi. Therefore, according to ICI, Morton was subject to the 180–day time frame. On the contrary, Morton argues that the discriminatory act was actually the *decision* to terminate her employment. That decision was made at ICI's Corporate Headquarters in Cordova, Tennessee. Thus, argues Morton, the 300–day time limit applies.

Both parties cite *Husch v. Szabo Food Serv. Co.*, 851 F.2d 999 (7th Cir.1988), in support of their respective arguments. *Husch* was also a case in which a discharged employee sued her former employer for violating the ADEA. At issue in *Husch* was whether the alleged discriminatory act took place in Illinois or Connecticut. The defendant's corporate headquarters were in Illinois, where the plaintiff also resided. The district court found that the alleged discriminatory act was the sending of a letter of discharge to the plaintiff from a Connecticut office, and thus that the discrimination occurred in Connecticut. Morton argues that this court should similarly find that the discriminatory act was the sending of a letter from Tennessee. However, ICI correctly points out that the plaintiff in *Husch*, who worked in several states, had worked most recently in Connecticut and had never worked in Illinois. Ultimately, *Husch* does not provide an answer to the currently pending question. The facts in *Husch* are sufficiently distinguishable that they can be manipulated in either party's favor. In any case, *Husch* is not binding precedent because it comes from outside the Sixth Circuit. Additionally, on this key issue the Seventh Circuit decided no more

than that the district court's ruling was not "clearly erroneous." *Id.* at 1002–03.

■ The court finds that the alleged discriminatory act occurred in Mississippi. Morton has cited no legal authority in support of her position that the law of the situs of the termination decision governs where the decision and termination occur in different fora. This court will not create a test which makes the place of decision the decisive factor. Such a test would be easily susceptible to the machinations of wily employers, who could make all their decisions in employment matters in non-deferral states to ensure that no employees have the advantage of the 300–day time frame. Morton worked exclusively in Mississippi. Had she not been discharged, she would have continued to work in Mississippi. The alleged discrimination is the termination of her employment, and the court holds that that act occurred in Mississippi. Therefore, Morton had 180 days from the date of her discharge in which to file an age discrimination charge with the EEOC. She did not file her charge until 292 days after her discharge. Her charge was untimely, and Morton is therefore barred from bringing her ADEA claim.

## B. The Single–Filing Rule

■ Though Morton did not file her own claim in time, Plaintiffs argue for a construction of the "single filing rule" which would save not only Morton's claim, but also those of Plaintiffs Babel, Howard, Steffel, Kroll, and Vogel.[1] The single filing rule permits the timely EEOC filing of one plaintiff to satisfy the filing requirements of other plaintiffs. *Howlett*, 49 F.3d at 194. The single filing rule, which applies only if certain conditions are met, allows plaintiffs who did not timely file to piggyback on the charge of a timely filing plain-

---

1. In Plaintiffs' Legal Memorandum in Opposition to Defendant's Motions to Dismiss, Plaintiffs do not include Morton's claim in their argument for application of the single filing rule. However, this seems to be only because of their previous argument that Morton filed her own timely claim, an argument that this

court has just ruled is incorrect. Accordingly, because the question of whether the single filing rule applies to Morton's claim is no different from the question of whether it applies to the claims of her five co-Plaintiffs, the court will include her claim in the discussion of this rule.

tiff. *Id.* The particular question in this case is whether the single filing rule will allow piggybacking by plaintiffs whose time limit for filing had already run at the time of the filing they wish to join. The answer is no.

Patton was the first Plaintiff to file an age discrimination charge with the EEOC. He filed his charge on October 22, 1998. Babel and Howard were discharged from employment on May 9, 1997, 530 days before Patton's filing. Steffel was terminated on May 15, 1997, 524 days prior to Patton's filing. Kroll was discharged on May 23, 1997, 516 days before Patton's filing. Vogel was terminated on September 15, 1997, 402 days before Patton's filing. Morton was terminated on January 16, 1998, 277 days prior to Patton's filing. It is undisputed that the claims of each of these six Plaintiffs depends on an application of the single filing rule to an EEOC filing that occured subsequent to the lapse of the Plaintiffs' own filing deadlines.[2] Not only do Plaintiffs fail to point to any legal authority in support of such an application, but a number of courts have squarely held that the single filing rule cannot save a plaintiff whose time limit elapsed prior to the filing of the EEOC charge he wishes to join. One district court recently held that the single-filing rule properly applies only to those individuals who could have filed a timely EEOC charge at the time the actual charge was filed. *Thiessen v. Gen. Elec. Capital Corp.*, 996 F.Supp. 1071, 1076 (D.Kan. 1998). The *Thiessen* court noted that "the vast majority of circuit courts that have addressed this question apply the single-filing rule only to those plaintiffs whose claims arise in the 'same time frame' as the filing plaintiff or who could have filed timely EEOC charges on the date which the filing plaintiff actually filed his or her EEOC charge." *Id.* at 1077 (citing cases). The Sixth Circuit is one of those circuits to have held that the single filing rule applies only "where a substantially related non-

filed claim arises out of the same time frame as a timely filed claim." *Wilson Metal*, 24 F.3d 836, 840.

In *Howlett*, the Sixth Circuit didn't directly address this exact issue, but did tackle the question of how broad an EEOC charge need be to allow piggybacking under the single filing rule. The *Howlett* court noted that the purpose of the EEOC filing requirement would be defeated if the single filing rule were allowed "to open the floodgates to large numbers of would-be plaintiffs, who were unforeseen by both the EEOC and [the defendant] at the time of the EEOC's investigation." *Howlett*, 49 F.3d at 196. In that case, the court allowed the untimely filer to piggyback, noting, "... because the statute of limitations has now run, McNeely is the only individual who could possibly piggyback on Ivey's charge.... [N]o one other than McNeely could possibly join this action." *Id.* at 196. This language strongly suggests that the Sixth Circuit has already concluded that the single filing rule applies only to those individuals who could have filed on the date of the timely filed charge.

The result urged by Plaintiffs would create an aberration by which individuals would be time-barred from pursuing their claims as individuals, but would be permitted to come into court as a class or group. This would turn the single filing rule from a procedural device designed to avoid wasteful repetition into an actual expander of substantive rights. See *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472, n. 326 (D.C.Cir.1976) (quoting 28 U.S.C. § 2072 for the point that "the Federal Rules of Civil Procedure 'shall not abridge, enlarge or modify any substantive right....' "). The D.C. Circuit concluded in *Laffey*, "Not surprisingly, then, courts which have considered the question directly have uniformly held that only those employees who could have filed charges with the [EEOC] individually when the

---

**2.** This is true in Morton's case because the court has already decided that she faced a

180–day time limit. *See* Sec. IV(A), supra.

class filing was made are properly members of the litigating class." *Id.* at 472.

The interpretation of the rule urged by Plaintiffs would not only expand substantive rights, but would effectively eviscerate the statute of limitations. Plaintiffs' rule would permit a time-barred employee to have his claim saved at any time after the passing of his filing deadline merely by a timely filing plaintiff who alleges age discrimination dating back several years. At some point in time, employers should be able to conclude that discharged employees can no longer bring claims. Congress has decided that that deadline should be 180 or 300 days following the alleged act of discrimination. Plaintiffs' loophole would swallow the filing deadline.

Plaintiffs argue that in *EEOC v. Kentucky State Police Dep't,* 80 F.3d 1086 (6th Cir.1996), cert. denied, 519 U.S. 963, 117 S.Ct. 385, 136 L.Ed.2d 302, the Sixth Circuit applied the single filing rule to allow piggybacking on charges filed years after the alleged discriminatory acts. Plaintiffs misrepresent the holding of this case, which deals with the equitable tolling doctrine. In fact, the *Kentucky State Police* court never even mentions the single filing rule. Also cited by Plaintiffs, but equally unhelpful, is *Wilson Metal.* In that case, the Sixth Circuit allowed a non-filing claimant to piggyback onto a charge that had been filed almost three years before her claim even arose. *Wilson Metal,* 24 F.3d 836, 840. Where Plaintiffs here wish to piggyback forward, the plaintiff in *Wilson Metal* piggybacked backward onto an already filed charge. That case does not address the statute of limitations bar that is at issue here.

■ Finally, Plaintiffs attempt to apply the single filing rule to two age discrimination claims filed against ICI in 1997. Those claims, filed by former ICI employees Nancy Jo Ann McGrath and Clyde Stewart, were filed within the filing periods of the Plaintiffs in this case. Those claims, however, do not qualify as substantially related to Plaintiffs' claims. First, McGrath and Stewart are not parties to

this litigation, and Plaintiffs have not cited any case allowing piggybacking onto a charge by an individual not a party to the litigation or related pending litigation. Second, McGrath and Stewart both complained of age discrimination, but unlike Patton's timely filed charge, neither alleged a pattern and practice of such discrimination. Therefore, their complaints did not put ICI on notice of Plaintiffs' claims. One of the basic purposes of the filing requirement is to put prospective defendants on notice. *Howlett,* 49 F.3d at 195. Piggybacking is allowed only if the timely filed charge "contains sufficient information to notify prospective defendants of their potential liability . . .". *Id.*

The single filing rule cannot save those Plaintiffs who failed to timely file EEOC charges. The earliest timely filed and substantially related charge was filed by Plaintiff Patton. That charge was filed after the expiration of the filing deadlines of Plaintiffs Morton, Babel, Steffel, Vogel, Howard, and Kroll. The single filing rule does not apply in such circumstances.

### C. John Howard and Richard Kroll

■ Plaintiffs Howard and Kroll put forth an additional argument in favor of being allowed to bring their ADEA claims. They rely on the doctrine of equitable tolling. The Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in Federal Court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Under the equitable tolling doctrine, the 180 and 300 day time periods will be tolled in limited circumstances. *Wilson v. Grumman Ohio Corp.,* 815 F.2d 26, 28 (6th Cir.1987). The circumstances in which equitable tolling applies may include misrepresentations by the EEOC to potential plaintiffs about the nature of their rights. *See, e.g., Chappell v. Emco Mach. Works Co.,* 601 F.2d 1295,

1303 (5th Cir.1979). Howard and Kroll argue that the ·EEOC misled them about their rights under federal law, and that they otherwise would have filed timely charges of age discrimination. Howard states that on June 5, 1997, he conferred with an EEOC official in Memphis. He states in his affidavit:

> I met with an EEOC representative. I cannot recall her name at this time. I showed the EEOC representative my termination letter and told her my age. The representative reviewed my letter and told me I did not have a claim. She told me to "forget it" and there was nothing I could do.

(Affidavit of John D. Howard).

Kroll's story is similar. He states that on May 23, 1997:

> I met with an EEOC representative. I cannot recall her name at this time. I explained to the representative that I had just returned from my vacation and was terminated. I showed the representative my termination letter. After reviewing my termination letter, the EEOC representative told me that I did not have a claim because there was a company reorganization and I was not being singled out for termination.

(Affidavit of Richard S. Kroll).

■ Before discussing the application of the equitable tolling doctrine to the circumstances alleged by Howard and Kroll, it is necessary to resolve an evidentiary question. Defendant argues that the entire case for applying the equitable tolling doctrine rests on a foundation of inadmissible hearsay evidence. In considering a motion for summary judgment, a court may not consider hearsay evidence that would be inadmissible at trial. *Jacklyn*, 176 F.3d at 927. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is inadmissible in a court of law unless it comes under one of the exceptions provided by the Federal Rules of Evidence. Fed.R.Evid. 802.

The evidence offered by Howard and Kroll about their respective conversations with unidentified EEOC representatives does not violate the hearsay rule because the statements are not being offered for the truth of the matter asserted. Plaintiffs offer the statements to prove that the statements were made. As such, the statements are not hearsay, and they are admissible.

■ Admitting the statements, however, is not enough to save Plaintiffs' claims, as they are inherently unverifiable. In circumstances such as these, courts have found that equitable tolling should not be used. In *Conaway v. Control Data Corp.*, 955 F.2d 358 (5th Cir.1992), the Fifth Circuit noted that "[t]he EEOC's misleading the plaintiff about the nature of his rights can also be the basis for equitable tolling." *Id.* at 362. In that case, however, the court held that equitable tolling was not supported by the plaintiff's unsupported allegation that he was misled by the EEOC, because allowing equitable tolling under such circumstances would create a great potential for abuse. *Id.* at 363. The court noted it would be practically impossible for the EEOC or the defendant to rebut the plaintiff's unsupported allegation. *Id.* Similarly, in *Sitarski v. IBM Corp.*, the district court denied a plaintiff's equitable tolling argument where the plaintiff testified in an affidavit that she had been misled by an unidentified EEOC representative. 708 F.Supp. 889, 890 (N.D.Ill.1989). The court stated, "Even accepting plaintiff's affidavit testimony as true, the court finds it insufficient to toll the limitation period. Plaintiff's testimony, by its very nature, can be neither verified nor disputed. To allow a plaintiff to escape the time limitation of 29 U.S.C. § 626(d) by alleging an unverifiable phone call to an unnamed person at the EEOC on an unspecified date would make escape from the requirements of Section 626(d) too easily and frequently accomplished." *Id. See also Eavenson v. Amresco, Inc.*, 1999 WL 20954, *7 (N.D.Tex.). The court

agrees with the reasoning of the other federal courts which have considered this question. The potential for abuse would be too great if a plaintiff could support a claim for equitable tolling with nothing more than an unverified allegation of having been misled by an unknown EEOC representative. Moreover, ICI should not be forced to pay the price for a mistake allegedly made by the EEOC. Since equitable tolling does not apply, the claims of Howard and Kroll are time barred by 29 U.S.C. § 626(d).

## V. Conclusion

Based on the foregoing, Defendant's converted motions to dismiss the ADEA claims of Plaintiffs Morton, Babel, Steffel, Vogel, Howard, and Kroll are granted. As there are no genuine issues as to any material facts, judgment is granted in favor of ICI as a matter of law.

**IT IS SO ORDERED.**